---

(No. 13938.—Appellate Court reversed; circuit court affirmed.)
SOMERS, JONES & Co., Defendant in Error, *vs.* IDA SPELL-
MEYER *et al.* Plaintiffs in Error.

*Opinion filed October 22, 1921—Rehearing denied Dec. 8, 1921.*

1. BAILMENTS—*title to grain does not pass to warehouseman
merely because no receipts are given.* Warehouse receipts are not
essential to create a contract for storage if that is, in fact, the
agreement, and in such a case the title to the grain does not pass
to the owner of the warehouse.

2. SAME—*title to grain stored in warehouse is not determined
by assessment for taxes.* In a controversy between parties who
delivered grain to a warehouse and the creditor of the warehouse-
man as to whether the grain had been sold to the warehouseman
or merely stored, the creditor cannot establish title to the grain by
making a return for assessment for taxes; nor is the failure of
the other parties to make the return sufficient to deprive them of
their title.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Ford county; the Hon. T. M. HARRIS, Judge, presiding.

A. L. PHILLIPS, O. R. MIDDLETON, and F. M. THOMPSON, for plaintiffs in error.

SCHNEIDER & SCHNEIDER, (EDWIN H. CASSELS, and BARRY GILBERT, of counsel,) for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On April 23, 1918, the defendant in error, Somers, Jones & Co., a corporation buying and selling grain on the board of trade in Chicago, filed its bill in the circuit court of Ford county against the plaintiffs in error and Charles Inkster, James Inkster, John Inkster and Al Phillips, alleging ownership of the oats in an elevator at Melvin, Illinois, and praying for an injunction restraining the plaintiffs in error from interfering with the removal of the oats from the elevator. A temporary injunction was ordered by the master in chancery and the defendant in error removed the oats and converted them to its own use. The plaintiffs in error, who were farmers in the neighborhood of Melvin, answered the bill and filed a cross-bill, alleging that in the summer and fall of 1917 the elevator was a public warehouse of class "B," and that they then stored in it their oats for a regular storage charge, to be mixed with other oats, and which were so mixed with other oats of like grade and quality; that their oats were about one-third of the total amount of oats in the elevator; that the defendant in error had attempted to take possession of their oats, together with the other oats, and refused to allow the owner of the elevator to deliver their oats to them, and that upon the issuing of the temporary injunction the defendant in error shipped out all the oats. The cross-bill prayed for an

300—5

accounting and payment for the oats claimed by the plaintiffs in error. The defendant in error answered the cross-bill, denying any ownership of the property in the plaintiffs in error and admitting that it had shipped out and removed from the elevator the oats therein and sold the same upon the market, as it was its right to do. The issues were referred to the master in chancery, who took the evidence and filed the same with his findings of fact that the several plaintiffs in error stored their oats in the elevator at a charge of one-half cent per bushel per month, mixed with other oats; that the number of bushels of oats so stored aggregated 7225 bushels and 20 pounds, and that the rest of the oats in the elevator were owned by the defendant in error and amounted to 12,340 bushels and 10 pounds. He stated the number of bushels stored by each of the plaintiffs in error, and recommended a decree requiring the defendant in error to pay the plaintiffs in error, respectively, for their oats, less their respective portions of taxes paid thereon by the defendant in error, to whom the oats were assessed in April, 1918. The cause was heard upon exceptions to the report, which were overruled, and a decree was entered in accordance therewith. The defendant in error appealed to the Appellate Court for the Third District, and that court reversed the decree and remanded the cause, with directions to dismiss the cross-bill for want of equity and to grant the relief prayed for in the original bill. The plaintiffs in error presented to this court a petition for a writ of *certiorari,* and upon a consideration of the same the writ was awarded.

The plaintiffs in error in the summer and fall of 1917 delivered oats from their farms at the elevator and received tickets therefor, and the oats were mixed with other oats in the bins of the elevator. They were not paid for the oats and no price was ever fixed. These facts were not disputed, and the only question to be considered is the one of fact whether the oats were delivered for storage or were sold to the owners of the elevator at some price to be fixed in the

future. The elevator at the time of the delivery of the oats was owned by James Inkster and John Inkster, partners as Inkster Bros., who owned and operated grain elevators at several places. The elevator at Melvin was managed by Charles Inkster, a son of James Inkster. In 1917 Inkster Bros. applied to the defendant in error to advance them money to conduct their grain business, and an agreement was made by which the defendant in error was to pay drafts drawn on it up to $10,000, as Inkster Bros. needed the money, and they were to ship to it all grain that they shipped to Chicago. About 90,000 bushels of oats were taken in at the elevator in the summer and fall and the greater part of them shipped out before November. Inkster Bros. became involved and were indebted to the defendant in error on November 19, 1917, for over $17,000 by reason of drafts drawn under the agreement, and on that day James Inkster, for Inkster Bros., gave to the defendant in error five papers, called collateral certificates, each certifying that there was unloaded in the elevator at Melvin, Illinois, 5000 bushels of oats, then in the elevator, and that the same would not be loaded out except on the surrender of the receipt for cancellation. On November 24, 1917, the defendant in error sent an agent to Melvin to ascertain what oats were in the elevator and to procure insurance. Charles Inkster gave him four or five policies of insurance, aggregating $14,000, to which there were riders afterward attached providing that any loss should be payable to the defendant in error as its interest might appear. Charles Inkster, at the request of the defendant in error, also posted notices on the oat bins in the elevator that the contents of the bins were the property of defendant in error, with a warning not to disturb on penalty of law. Plaintiffs in error, through their agent, Al Phillips, claimed the amount of oats deposited in the elevator and attempted to prevent their shipment. A few cars were shipped under an arrangement by which the defendant in error was to remit one-third of the proceeds to Charles Ink-

ster, the nature of which agreement is in dispute, but it was terminated and the controversy as to the ownership of the oats continued. On February 12, 1918, Charles Inkster purchased the elevator from Inkster Bros., and after that the original bill was filed.

The testimony of Ida Spellmeyer, Al Phillips, husband of Sarah J. Phillips, George Foster and Richard Folkern was clear and positive that the oats were stored in the elevator at a charge of one-half cent per bushel per month, and Charles.Inkster gave the same testimony as to each such contract, and also that the oats of Albert Buchholz were stored under the same contract. Ida Spellmeyer, George Foster, Al Phillips and Richard Folkern all testified that they had stored oats the year before in the same elevator and had paid one-half cent per bushel per month for storage, and some of them said that they had stored oats there in the same way for many years.

The reasons offered in support of the conclusion of the Appellate Court are, that no warehouse receipts were given when the oats were delivered; that the books kept at the elevator did not show that the oats were in storage; that the plaintiffs in error did not return the oats to the assessor for assessment as their property; and that the testimony of Charles Inkster was so discredited by his acts and statements to the defendant in error that he was unworthy of belief.

Warehouse receipts were not given to the plaintiffs in error until February 1, 1918, when they were called for and delivered. Warehouse receipts are not essential to create a contract for storage if that is the agreement, and in such a case the title to the grain does not pass to the owner of the warehouse. *Yockey* v. *Smith,* 181 Ill. 564.

The books of the elevator did not show, in terms, that the oats were in storage, but parallel check-marks appeared as to the oats of plaintiff in error and did not appear as to oats which were purchased. It is said that the parallel lines might have been put on the book at any time; but that is

equally true of a direct statement of storage, and the argument does not apply to the absence of the parallel marks where entries were made as to the oats of the plaintiffs in error.

The plaintiffs in error did not return any of the oats for assessment in the spring of 1918, and in April, about the time the bill was filed, the defendant in error made return of the oats and they were assessed to it. One of the plaintiffs in error told the assessor he had oats in the elevator but they had taken them away from him, and he gave no return of them. The defendant in error could not establish title by returning the oats for assessment, and, considering the circumstances and the claim of the defendant in error, the failure to make return is not sufficient to deprive the plaintiffs in error of their property.

Charles Inkster gave to the defendant in error a written statement that the oats were clear of any claims except those of the defendant in error and that they would be loaded out as soon as possible, and there was testimony that he told the defendant in error in Chicago that he gave the plaintiffs in error storage receipts on February 1 because they wanted them; that there was no written agreement of storage; that if he charged storage he would have to file a schedule with the Public Utilities Commission; that the plaintiffs in error did not intend to haul the oats away and sell them to somebody else but the price was to be settled at some future date; that they were bull-heads, and it was ridiculous and he was getting sick and tired of it. He contradicted the verbal statements and said his writing referred to the claims of other grain dealers and not to the oats in storage, but, assuming that he made the verbal statements, it is apparent that he was between two fires and that he was temporizing and trying to delay matters, perhaps in the hope of a settlement. The statements tended to discredit him, but whether they are sufficient to overcome his sworn testimony or not, they are wholly insufficient to justify the conclusion that the

evidence for the plaintiffs in error was false and no such contracts as claimed were made.

We cannot conclude that the evidence for the plaintiffs in error as to the nature of the contract was either destroyed or overcome by any fact or circumstance developed on the trial, and the necessary conclusion is that the Appellate Court erred in reversing the decree.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court affirmed.*

---

(No. 14035.—Reversed and remanded.)
The Lake Erie and Western Railroad Company, Appellee, *vs.* Louis L. Emmerson, Appellant.

*Opinion filed October 22, 1921—Rehearing denied Dec. 9, 1921.*

This case is controlled by the decision in *Armstrong* v. *Emmerson, (ante,* p. 54.)

Appeal from the Circuit Court of Sangamon county; the Hon. E. S. Smith, Judge, presiding.

Edward J. Brundage, Attorney General, (Clarence N. Boord, and James W. Gullett, of counsel,) for appellant.

Geo. B. & Geo. M. Gillespie, (John B. Cockrum, of counsel,) for appellee.