SAWERS GRAIN COMPANY ET AL. *v.* GOODWINE ET AL.

[No. 11,589. Filed March 11, 1925. Rehearing denied June 4, 1925. Transfer denied October 29, 1925.]

1. APPEAL.—*Error in overruling demurrer is harmless where there is a special finding and conclusions of law, if conclusions are correct and facts found are within the issues.*—Where there is a special finding of facts and conclusions of law are stated thereon, any prior error in overruling a demurrer becomes harmless if the conclusions of law are correct and the facts found are within the issues. p. 558.

2. LIENS.—*Owner of property may create charge or claim against it in nature of a lien which will be enforced against him or claimants under him with notice thereof.*—One may create a charge or claim in the nature of a lien on property of which he is the owner or in possession, which a court of equity will enforce as against him and as against volunteers or claimants under him with notice thereof. p. 566.

3. WAREHOUSEMEN.—*Elevator owner held to be bailee of grain deposited under agreement whereby depositors had right to sell to him or to order him to sell and account for proceeds.*—The owner of an elevator who received grain on deposit under an agreement that he was to keep an equal quantity of like

grain on hand at all times and that the depositors were to have the right to sell the same to him at any time or to order him to sell the same and to account to them for the proceeds was only a bailee, and, except by sale *in due course*, could do nothing that would defeat the rights of the depositors in such grain (*Preston* v. *Witherspoon*, 109 Ind. 457, distinguished). p. 566.

4. WAREHOUSEMEN.—*Warehouseman cannot create equitable lien on grain deposited with him by consigning same to dealer to whom he was indebted for advancements.*—Where grain was deposited in an elevator under an agreement that the depositors were to have the right to sell the same to the warehouseman or to order him to sell the same and to account for the proceeds, he to keep an equal quantity of like grain on hands at all times, he could not, except by a sale *in due course*, defeat the rights of the depositors in and to the property or create an equitable lien thereon by consigning said grain to a dealer to whom he was indebted for advancements. p. 566.

5. PRINCIPAL AND AGENT.—*Agent of elevator owner, holding grain as bailee, held without power to complete contract for sale of grain after death of owner.*—Under the general rule that the death of a principal revokes all authority of the agent, an agent of an elevator owner who had received grain on deposit under an arrangement constituting a bailment did not have authority, after the death of the elevator owner, to complete contract for sale of said grain by shipping same to a dealer under a contract whereby the latter was to sell said grain and reimburse itself for advancements made to the elevator owner. p. 567.

6. ACTION.—*Persons depositing grain in elevator commingled with the common mass of grain therein held authorized to join in action for conversion.*—Persons who deposited grain in an elevator in varying amounts which was mixed with the common mass of grain therein were tenants in common of such grain and, therefore, had a joint interest therein authorizing them to join in an action for the conversion of such grain. p. 568.

From Tippecanoe Superior Court; *Henry H. Vinton,* Judge.

Action by Earl Goodwine and others against the Sawers Grain Company and others. From a judgment for plaintiffs, the defendants appeal. *Affirmed.* By the court in banc.

*William Darroch* and *Stuart, Simms & Stuart,* for appellants.

*Ringer & Ringer, Ralston, Gates, Lairy, VanNuys & Barnard* and *Jones & Lairy,* for appellees.

ENLOE, J.—By this action the appellees sought a recovery in damages against the appellants for the alleged wrongful conversion of a quantity of corn. The issues being settled, the cause was submitted to the court for trial with a request for a special finding of facts and a statement of conclusions of law thereon. This was done, and resulted in a statement of conclusions of law favorable to the appellees and a judgment thereon accordingly.

The errors assigned and presented in this court challenge the action of the trial court in: (1) Overruling demurrers to the amended complaint; (2) in overruling motions for a new trial; and (3) error in conclusions of law stated.

It is the settled law of this state that where there is a special finding of facts and conclusions of law are stated thereon, any antecedent ruling overruling

1.    a demurrer to any pleading becomes harmless, even though it be erroneous, if the conclusions of law stated are valid and the facts found are within the issues. *Woodward* v. *Mitchell* (1895), 140 Ind. 406; *Smith, Trustee,* v. *Wells Mfg. Co.* (1897), 148 Ind. 333. We shall, therefore, at once pass to a consideration of the finding of facts and the conclusions of law stated thereon.

It appears from the special finding that one Frank R. Pence owned and operated a grain elevator at Tab, Warren county, Indiana, from 1913 to August 3, 1920, on which day said Pence died; that during said time, said Pence engaged in the business of buying, selling, receiving and storing grain, including corn: "That from the 6th day of November, 1919, to the 3rd day of August, 1920, the defendant Harold R. McCollum was continuously in the employ of said Frank R. Pence

in the conduct of said elevator, under the direction of said Frank R. Pence save and except the period from June 15th. to July 15th., 1920; that during all of the time of his said service he was duly clothed with full power to receive grain at said elevator and receipt therefor, to execute checks on behalf of said Frank R. Pence and deliver the same in payment of corn received by him in said elevator, and to borrow money at the bank for the purpose of purchasing corn delivered to said elevator, and to execute notes therefor, and to ship and bill out corn in due course from said elevator, arrange for and receive advances on corn to be consigned and shipped from said elevator, draw bills of lading, and draw sight drafts and attach the same to such bills of lading, and to keep the books reflecting the business transacted through said elevator, all of which he did in due course during his said period of service."

The court further found that the appellees, between May 28 and July 7, 1920, delivered to said Pence, at his said elevator, yellow shelled corn in ·the following amounts, viz.:—Earl Goodwine, 7,704 bushels and 6 pounds; Arthur Arehart, 834 bushels and 18 pounds; Jerry O. Scott, 1,044 bushels and 44 pounds; Fred Greenburg, 1,531 bushels and 10 pounds, of which corn the several appellees so delivering were then the owners. That all of said corn was delivered under the following agreement, viz.: "The corn was to be placed in the said elevator at Tab, Indiana, and each of the said plaintiffs had the right in the future to sell the corn belonging to him to said Pence, or to order said Pence to ship and sell the same for him and to account to him for the proceeds of such sale after deducting the cost of shipment and sale and a reasonable compensation for said Pence for handling said corn. It was known to the parties to all said agreements that it was the custom of Pence in handling the corn in his elevator

under the conditions stated, to place said corn in the bins of the elevator with other corn of like kind and quality and to ship and sell corn from the common mass in the bins of the elevator; and it was understood by all of the parties to said contracts that the corn should not be kept separate from other corn and the identical corn retained in the elevator until such time as the plaintiffs who placed it there should direct Pence to ship it for him, or otherwise dispose of it; but it was also understood by the parties to all of the said contracts that an equal amount of corn to that deposited, of like quality and kind, should be on hand in said elevator, at any time any of said parties might direct said Pence to ship and sell said corn on his account. The corn of the several plaintiffs was delivered and placed in the bins of the elevator in a common mass with other corn of like quality and kind, and said Pence did ship and sell corn from the common mass in the bins of said elevator, until a few days prior to his death."

It is further found that Frank R. Pence died on August 3, 1920, leaving an insolvent estate; that, on the day of his death, there was on hand in the bins of said elevator, in a common mass, 9,327 bushels and 8 pounds of corn of like kind and quality to that placed therein by the appellees, which said corn then in said elevator was not equal in amount to the corn placed in said elevator by appellees, under said contract, but was deficient by 1,787 bushels and 14 pounds; that prior to the death of said Pence, none of the appellees had either sold any of said corn or ordered the same to be shipped out; that on August 7, 1920, 3,146 bushels and 24 pounds of yellow shelled corn was taken from the mass of the corn in the bins at said elevator, loaded into cars, and on August 9, 1920, shipped to appellant grain company; that the value of the corn so shipped, at Tab, Indiana, on the day said cars were loaded, was $4,926.83; that

said corn was taken from the bins, loaded and shipped by the orders and at the direction of the appellant Harold R. McCollum, and pursuant to an agreement made by him with William Simons, one of the appellants herein, and who was the representative of appellant grain company, on August 2, 1920, the court's finding as to said agreement being as follows:—"On the second day of August, 1920, an agreement was made by and between Harold R. McCollum, agent of Frank R. Pence, and William Simons acting for the Sawers Grain Company, by the terms of which the Sawers Grain Company authorized McCollum as agent of Pence to draw a sight draft on Sawers Grain Company in favor of the Citizens Bank of Tab, Indiana, for the sum of four thousand dollars ($4,000) in consideration of the agreement by McCollum as agent for Pence that he would ship to the Sawers Grain Company the first two car loads of corn to be shipped from the mass of grain then in the elevator at Tab, Indiana, on consignment, to be sold by said Sawers Grain Company and the proceeds to be applied, after deducting expenses and commissions, to the payment of the indebtedness created by the payment of said draft, and a pre-existing indebtedness of about nine hundred dollars ($900) due to said grain company from said Pence. On the same day, a draft was drawn by McCollum as agent for Pence, in accordance with said agreement, which said draft was by said McCollum delivered to the Citizens State Bank of Tab, which passed the same to the credit of Frank R. Pence, and forwarded it to a bank in Chicago for collection. On the following day about 11:00 o'clock a. m. said draft was presented to the Sawers Grain Company at Chicago, Illinois, and was at once honored and paid. That on the second day of August, 1920, no specific number of bushels of corn was

specified as the amount to be shipped, and no corn was set apart or segregated from the mass in the elevator for that purpose, and the corn which was afterwards shipped was not separated from the mass in the elevator until it was loaded on the cars on the 7th day of August, 1920, as hereinbefore found."

It was further found that on August 7, 1920, letters of administration on the estate of Frank R. Pence to his widow Delia M. Pence, were granted, and that on the same day she, as such administratrix, leased said elevator to Harold R. Pence and J. O. Crane, and that Pence and Crane took possession of said elevator on the morning of August 9, 1920; that at the time Pence and Crane took possession of said elevator, the two cars loaded with corn, as above found, were on the railroad siding at Tab, billed in the name of the Frank R. Pence estate to Indianapolis, Indiana, with directions to notify the Sawers Grain Company on their arrival; that said Crane inquired of McCollum, concerning the corn in said cars and was told by McCollum that said cars were loaded with corn which had been placed in the elevator by farmers under contract, the terms of which we have hereinbefore set out; that on August 10, 1920, said two cars of corn were received by the Sawers Grain Company and sold, and the net proceeds of said sale applied by said company to the payment of a debt due to said company from the estate of Frank R. Pence, for money advanced by said company to him in his lifetime; that after said cars of corn had been received by said company, Pence and Crane, acting for the appellees, made a draft on the Sawers Grain Company for the proceeds of the sale of said two cars of corn, which draft was presented to said company and payment thereof refused; that the fair market value of the corn so shipped and received by said company at Indianapolis, Indiana, at the time it was so received, was $4,926.83 net; that

on August 2, 1920, neither William Simons nor the Sawers Grain Company had any actual knowledge of any claim of appellees or either of them, upon or against said corn or any part of it in said elevator, nor did said Simons or said Sawers Grain Company ever thereafter acquire any knowledge of any such claim of appellees upon said corn until on or about August 9, following; that after appellee Jerry O. Scott had placed his corn in said elevator, as before found, he received from Frank R. Pence the sum of $500, under an agreement that said amount should be deducted from the proceeds that would arise from the sale of said corn of said Scott.

Finding No. 13, as made by said court, was as follows: "The court further finds that on the 10th day of August, 1920, the Sawers Grain Company came into the possession of the two car loads of corn heretofore mentioned, containing 3,141 bushels and 24 pounds of yellow shelled corn, which said corn was on said day the property of the plaintiffs in the proportions as heretofore found, and was of the value of $4,926.85; that on said day said Sawers Grain Company unlawfully and without right converted said corn to its own use and benefit; that said corn was wrongfully taken and carried away from the elevator at Tab, Indiana, by the order and direction of said William Simons with the aid and assistance of appellant, Harold R. McCollum; that the interest on the sum of $4,926.85 from the date on which the said property was converted to the date on which its said finding was filed, was the sum of $524.70, and that the total damage occasioned to the appellees by said conversion was, to date of filing of finding of facts, $5,451.55."

The court further found that the Sawers Grain Company was a corporation organized under the laws of the State of Illinois, and, as such, was authorized to buy and sell grain on commission, and to do a general grain

commission business; that said company held a mort-gage on the said elevator at Tab, Indiana, in the sum of $25,000, from the year 1913, until after the transaction here in question; that many times prior to August 2, 1920, it had advanced large sums of money to said Frank R. Pence, to be used in the business of said elevator; that on August 2, 1920, said company, said Simons, and said McCollum well knew that the bank carrying the said elevator account was refusing to honor any more checks issued by said Frank R. Pence or his agent, in the operation of said elevator; that said elevator had, on said date, overdrawn its account and that there were checks outstanding amounting to a large sum, and that appellants knew the desperate condition of the business of the said elevator on said date; that the appellants each knew that it was and had been the custom of said elevator, for a number of years, to receive corn on deposit, to be commingled with the common mass, with an option reserved in the depositor to ship said corn, or corn of like kind and amount, at a future time upon demand of the depositor and for the depositor, and to account to the depositor for the proceeds of such sale, after deducting the cost of shipment and sale and a reasonable compensation to said Frank R. Pence for handling said corn; that on August 2, 1920, each of the appellants knew that there was only a small amount of corn in said elevator; that, for many years, there had been and was at the time of this transaction, an intimate personal and business relationship between the Sawers Grain Company, through William Simons, president and manager of said company, and Frank R. Pence, and his elevator at Tab, growing out of the financing of said elevator and its business, and that by mutual understanding all the corn taken in at said elevator at Tab was to be consigned to said Sawers Grain Company.

It was further found that on August 9, 1920, the Sawers Grain Company had actual knowledge of the claim of appellees to the corn in question; that McCollum knew that the corn in the elevator on August 2, 1920, belonged to the appellees; that the books at said elevator showed approximately the amount of corn in the elevator; that more corn had been taken on deposit than was then in said elevator, and that said corn had not been paid for, except in part as heretofore set out; that on August 2, 1920, and from thence until after August 10, 1920, and until after the conversion thereof as before set out, the appellees were the owners of said corn, as tenants in common, in the following proportions, viz.:—Earl Goodwine, .963; Fred Greenburg, .137; Jerry O. Scott, .094; and Arthur Arehart, .076; and that the transaction between the Sawers Grain Company and said McCollum, on August 2, 1920, was not in the usual course of business, and that the said Sawers Grain Company was not an innocent purchaser of said corn.

The conclusions of law as stated by the court, so far as they affect the appellants, were as follows: "First. That the law is with the plaintiffs. Second. That the plaintiffs are entitled to recover of and from the defendants the sum of Five Thousand four hundred and fifty-five Dollars and sixty-five cents, ($5,455.65) on the issues joined on the amended complaint and the answer thereto. Third. That the plaintiffs are entitled to recover on the issues joined on the amended second paragraph of defendants' answer. Fourth. That the plaintiffs are entitled to recover on the issues joined on amended third paragraph of defendants' answer."

Exceptions were duly taken and saved to each conclusion of law, so that the question we now have to consider is as to the validity of each of said conclusions.

The appellants insist that the conclusions of law are

erroneous for the reason, as they contend, that "upon the facts specially found by the court an equitable lien upon the two cars of corn in controversy was created in favor of the Sawers Grain Company, which was superior to the rights of the appellees" therein.

The law is well settled that a party may, by manifest intent and agreement, create a security, charge or claim in the nature of a lien on real or personal 2-4. property of which he is the owner or in possession, which a court of equity will enforce as against him, and against volunteers or claimants under him with notice of the agreement. 17 R. C. L. 604, §13, and authorities there cited. The cases of *Reardon* v. *Higgins* (1906), 39 Ind. App. 363, and of *Duffy* v. *England* (1911), 176 Ind. 575, are illustrative of the principle involved in the claim of appellants, but, the facts, as found by the court, do not bring the appellants within said rule. The appellants did not make their said agreement with the owners of said corn, nor were they purchasers in regular and due course of business; the *appellees* are not asserting any claim *under or through* Pence, but are claiming in their own right, as owners of the corn in question. The appellants, under the findings of the court, simply advanced money to Pence, under and upon the promise of Pence, made through his agent, McCollum, that the said grain, when shipped, should be consigned to them so that they, as brokers might sell it, and that, when so sold, they should reimburse themselves for the money so advanced. Upon the facts as found, the appellants are not within the rule announced in *Preston* v. *Witherspoon* (1886), 109 Ind. 457, 58 Am. Rep. 417, that where one deposits grain for storage in an elevator, knowing at the time that the grain so deposited is to be commingled with other grain of like quality and kind, owned by the owner of such elevator, and such grain is *purchased* from the owner

of the elevator *in due course*, such purchaser is protected. If Pence had been the owner of the grain in said elevator on August 2, 1920, he could, of course, have created a lien, either legal or equitable, upon the same; but he was not such owner, he was simply a bailee, and, *except by sale in due course*, as against the appellees, *he* could do no act which would defeat their rights in and to said property. *Kiefer* v. *Klinsick* (1895), 144 Ind. 46; *Partlow, etc., Co.* v. *Stratton* (1919), 71 Ind. App. 122; *Somers, Jones & Co.* v. *Spellmeyer* (1921), 300 Ill. 64, 132 N. E. 787. We, therefore, conclude that the contention of the appellants as to their having an equitable lien upon said corn is not well taken.

The appellants next insist that the death of Pence did not revoke the agency of McCollum in this case, that said McCollum still had authority to ship the corn in question and to carry out the said contract of August 2, 1920, and many authorities are cited as sustaining their contention in this behalf. If, by the said contract, the appellants had acquired a lien upon said corn, a property right in and to said corn, there would, under the authorities cited, be merit in their contention; but, as we have held that under the findings herein they had no such lien as contended for, and no property right in and to the said corn in question, their contention in this behalf is not well founded. The general rule, that the death of the principal revokes all authority of the agent, must apply. *Hawley, Admr.,* v. *Smith, Admr.* (1873), 45 Ind. 183; 21 R. C. L. 859, §35, and cases cited. We, therefore, hold that the act of McCollum in shipping said corn to Sawers Grain Company, under the facts as found by the court, was without any authority of law to sustain it, and was, so far as appellees were concerned, a wrongful conversion of their property, and that neither the Sawers Grain

Company nor said McCollum can base any valid claim upon said contended-for authority.

It is also urged that the appellees have no such unity of interest in this case as to entitle them to bring and maintain this suit, and that therefore the conclu-

6.    sions of law favorable to them should be set aside as being erroneous. This contention also applies to the alleged insufficiency of the complaint, the right of these parties to maintain, jointly, a suit for the damages sustained.    Under the facts found, it is well settled that the appellees were "tenants in common" of the grain on hands and in the elevator at Tab, at the time of the death of Frank R. Pence. *Schindler* v. *Westover* (1884), 99 Ind. 395; *Drudge* v. *Leiter* (1898), 18 Ind. App. 694, 63 Am. St. 359. In the case last cited, it was said: "But if at any time the whole mass were less than the aggregate deposits, then all the depositors, or tenants in common, would together own all the grain, but each depositor would have an undivided share less than the quantity deposited by him, being such proportion of the grain remaining in store as his deposit would bear to the aggregate of the deposits." Also, in *Troxel* v. *Thomas* (1900), 155 Ind. 519, it was said: "It is the settled rule in this State that under our civil code all persons who unite as plaintiffs must have an interest in the subject of the action. But this rule is not to be interpreted so as to require that the interest of all the plaintiffs who do unite must be equal. * * * All, however, must have some common interest in respect to the subject-matter of the action, and each must be interested, at least to the extent that all who join as plaintiffs must have some relief in respect to the subject-matter of such suit." The appellees are well within the rule announced and it follows that appellants' contention in this behalf is not well taken.

Appellants also urge that the decision of the court

is not sustained by sufficient evidence. In support of this contention, they call attention specifically to certain designated findings made by the court, and urge that there is no evidence to sustain them. A reading of the evidence convinces us that there is evidence in the record sufficient to sustain each and every material fact in this case as found by the court, necessary to sustain the conclusions of law stated.

The material findings of fact herein are each and all within the issues of the case and we need not, therefore, further consider any alleged error in relation to the pleadings herein.

We find no error in this record; judgment affirmed.

Dausman, C. J., Remy, P. J., and McMahan, Nichols and Thompson, JJ., concur.