CHAS. A. PILLSBURY *vs.* MARY C. MORRIS.

Argued July 7, 1893. Affirmed Sept. 5, 1893.

**Party-Wall Agreement.**

In an agreement for a party wall, one of the parties covenanted and agreed to pay to the other the value of that portion thereof which would rest on his land whenever he should use the same. *Held* a personal covenant, which the covenantee might assign separately from the land.

**Lot Assigned Subject to Party-Wall Contract.**

And where, upon the death of such covenantor, and the distribution and partition of his real estate, a lot or parcel affected by the party-wall contract was assigned to one of his heirs, subject to such contract, *held*, that the assignee took the same *cum onere*, and the covenant of his ancestor might be enforced as a charge upon the land.

**Covenants not Merged in a Later Contract.**

Where an agreement, besides a covenant for the execution of a lease, contained also certain independent stipulations, obviously not intended to be included in the lease, but obligatory *in praesenti, held*, that the latter were not merged in or superseded by the lease when executed.

Appeal by defendant, Mary C. Morris, from a judgment of the District Court of Hennepin County, *Frederick Hooker, J.,* entered March 9, 1893.

Franklin Steele owned a lot one hundred and thirty-two (132) feet front on Washington Street by one hundred and sixty-two (162) feet deep, situated on the southeast corner formed by the intersection of that street and Second Avenue North, in Minneapolis. On October 13, 1876, he made a contract under seal with Sanford S. Small to lease to him for one hundred years the southerly eighty-eight (88) feet front on the street, and Small covenanted to erect a business block thereon. The northerly wall was to be built on the line one-half on each side, and Steele covenanted to pay, when he should use the wall, one-half its value. Second Avenue North was then called Kansas Street and First Avenue North was called Utah Street. The building was constructed and the lease executed and delivered. On June 27, 1877, Small assigned his lease to S. G. Cook, but reserved his right against Steele for pay for half the party wall, when Steele should use it. On July 30, 1877, Small sold and

assigned to the plaintiff, Charles A. Pillsbury, his said right against Steele. On September 10, 1880, Franklin Steele died intestate and administration was duly had on his estate in the Probate Court of Hennepin County. The forty-four (44) feet front adjoining that leased to Steele was by final decree of distribution assigned *"subject to party-wall contract,"* to the defendant, Mary C. Morris, a daughter of Steele. She afterwards used the wall. Her tenants built on her lot August 22, 1889, and used the wall with her consent. Pillsbury brought this action August 12, 1890, to determine the value of the northerly half of the party wall, and have it adjudged a lien on her lot, and asking that the lot be sold to pay it. The court found the value to be $693, and adjudged it a lien on defendant's lot, and directed the lot to be sold by the Sheriff to pay that amount with interest from August 22, 1889, and costs. She moved for a new trial, but was denied, and judgment was entered. She appeals.

*Kitchel, Cohen & Shaw,* for appellant.

The contract of October 13, 1876, was merged in the lease from Steele to Small. The lease contained no provision of any kind with reference to the party wall. It must be presumed that the lease gives full expression to the final purposes of the parties, and that if it differs from the preliminary contract the changes made in it were by mutual agreement of the parties. *Whitney* v. *Smith,* 33 Minn. 124; *Thwing* v. *Davison,* 33 Minn. 186; *Griswold* v. *Eastman,* 51 Minn. 189.

If the party wall referred to in the decree of distribution be the party wall here in question, the phrase "subject to party-wall contract" inserted in the decree by the Probate Court, must have been inserted merely as a matter of caution in view of the fact that there was a party wall affecting the premises. The decree of distribution was not made for the benefit of any others than the parties to it, and was not intended to create any contractual rights in favor of Small, or his assigns, or to revive rights which had lapsed. If it was so intended, the decree was void in that particular. The Probate Court had no jurisdiction of the subject-matter. *Farnham* v. *Thompson,* 34 Minn. 330; *Mousseau* v. *Mousseau,* 40 Minn. 236; *Dobberstein* v. *Murphy,* 44 Minn. 526.

The party-wall agreement, if not merged, was a covenant running with the land, and the performance of its obligations rested upon such assignee of the servient estate as used the wall, to wit, the tenants of Mrs. Morris. What constitutes a covenant running with the land is set forth in *Shaber* v. *St. Paul Water Co.*, 30 Minn. 179; *Kettle River R. Co.* v. *Eastern Ry. Co.*, 41 Minn. 461.

The supreme court of Massachusetts held a precisely similar covenant to be one running with the land. *Savage* v. *Mason*, 3 Cush. 500; *Richardson* v. *Tobey*, 121 Mass. 457.

Mrs. Morris was not liable for the use of the wall by her lessees. The complaint states that Palmatier, the lessee, used the party wall, and the findings are to the same effect. The only basis for the claim that Mrs. Morris should pay for this wall so used by her tenants, is that she took the land in the distribution of her father's estate "subject to party-wall contract," and that she made a lease of the land running to the middle line of the party wall and authorizing her lessees to improve the land with buildings.

The party-wall cases in this state, *Warner* v. *Rogers*, 23 Minn. 34, and *Mackey* v. *Harmon*, 34 Minn. 168, establish that a party wall is a mutual easement appurtenant to each estate; that such an easement is an incorporeal hereditament, an interest in the servient estate; and that such an easement, being a right or interest of a third person in land, to the diminution of its value, is an incumbrance. When, therefore, land upon which such a wall rests is taken "subject to a party-wall contract," the force of the phrase is simply to make the land subject to an easement. This incumbrance is not one for the payment of money. If the term "subject to a party-wall contract" in any manner changed Mrs. Morris' relations to the land, or the relations of the land to the party wall, the Probate Court exceeded its jurisdiction in attempting to make an adjudication upon that matter.

*Cross, Carleton & Cross,* for respondent.

The party-wall agreement was not merged in the lease.

The charging of the northerly forty-four feet front with the party-wall contract was a proper and reasonable provision to be made in administering on the estate of Franklin Steele and in partitioning and distributing the land to Mrs. Morris subject to the

party-wall contract. The Probate Court acted within its jurisdiction, and Mrs. Morris has ratified the decree and cannot now dispute it. *Farnham* v. *Thompson,* 34 Minn. 330; *Mousseau* v. *Mousseau,* 40 Minn. 236; *Dobberstein* v. *Murphy,* 44 Minn. 526.

This is a collateral attack on a judgment, and nothing appearing to the contrary, it must be presumed that the Court had jurisdiction if there could have been any facts proved to the court which could have given it jurisdiction. Mrs. Morris took whatever interest she has in the land, subject to the party-wall contract. That one charges land with the payment of a debt or liability by deeding subject to it, was decided in *Alt* v. *Banholzer,* 36 Minn. 57.

*Scott* v. *McMillan,* 76 N. Y. 141, holds no further than that a party who took subject to a party-wall contract was not personally liable.

This covenant of Steele, to pay the value of his half of the party wall when he should use it, did not run with Small's lease or pass to his grantees of that lease. It belonged to him and passed by his assignment of it to plaintiff. *Todd* v. *Stokes,* 10 Pa. St. 155; *Gilbert* v. *Drew,* Id. 219; *Davids* v. *Harris,* 9 Pa. St. 501; *Hart* v. *Lyon,* 90 N. Y. 663; *Joy* v. *Boston Penny Savings Bank,* 115 Mass. 60; *Conduit* v. *Ross,* 102 Ind. 166; *Cole* v. *Hughes,* 54 N. Y. 444; *Gibson* v. *Holden,* 115 Ill. 199.

The court was right in giving judgment for $693 together with interest from and after August 22, 1889. It is so held in *Scott* v. *McMillan,* 4 N. Y. Supp. 435; 16 N. Y. St. Rep. 795.

VANDERBURGH, J. On the 13th day of October, 1876, Franklin Steele was the owner of the premises described in the complaint, and, in contemplation of a lease thereof to one Sanford S. Small, of the same date, entered into an agreement of that date with the latter in and by which, in consideration of the lease to be so executed by the parties, and in consideration of the covenants agreed to be kept and performed by Steele in such agreement, Small agreed to commence at once the construction of a business block on the premises, which are particularly described in the agreement, and complete the same within a time specified, according to the specifications therein mentioned. It was further agreed that Steele should unite with Small in a mortgage upon the premises; and it was also provid-

ed therein "that separate leases might be made, each containing the aforesaid conditions and provisions, of portions of such land." And the agreement contained certain later and additional specific provisions, among which are the following: "Nothing in this agreement shall be so construed as to impair and render inoperative any covenant or agreement in the lease or leases to be made as hereinbefore specified and contemplated."

"It is further covenanted and agreed by and between the parties hereto that all covenants, agreements, grants, or undertakings assumed, made, granted, or undertaken by either party to this contract shall bind the heirs, executors, administrators, and assigns as fully and effectually as if the same heirs, executors, administrators, and assigns had been particularly mentioned in each of said covenants, agreements, grants, and undertakings."

"The said party of the second part [Steele] grants to said first party the right to erect one-half of the walls of said building on the side towards Kansas street and the side towards Utah street on the land adjoining the above-described premises; and the said party of the second part, or his assigns, will pay the said first party the value of one-half of party walls whenever said second party or his assigns shall use the same."

It also appears that Small, in pursuance of the contract, proceeded to erect a building on the northerly side of the lot so agreed to be leased, and erected the party wall as agreed, being the wall in controversy here; and, after the construction thereof, the lease contemplated by the contract referred to was executed, in January, 1877, but bearing date as of October 13, 1876, which lease made provision for the execution of a mortgage, as required by the contract just mentioned, but made no reference to the party wall. A mortgage was accordingly executed upon the leased premises by Steele and Small, which was afterwards foreclosed, and the premises redeemed from the foreclosure sale by Steele, as he was authorized to do by the terms of the lease. Small assigned to one Cook the leasehold interest held by him, under the lease above mentioned, reserving, however, the rights to the northwesterly party wall secured to him by the contract with Steele. By the terms of the assignment, the assignee agreed to assume and pay the mortgage upon the premises. The court finds that on the 30th day of July, 1877,

Small, for a valuable consideration, granted, assigned, and transferred to the plaintiff all his right, title, and interest in and to the party wall in question, and all moneys which might become due under the contract, for the value of the wall when it should be used by Steele, his heirs or assigns; and this finding is not objected to by the appellant.

Steele having died intestate, administration was had on his estate, which was duly partitioned among his heirs, and the land next adjoining the leased premises referred to and including one-half of the party wall in question, which Steele agreed to pay for, was duly assigned to this defendant, "subject to the party-wall contract;" and the premises so assigned to defendant have been leased by her for a term of years, with right of renewal; and the lessees have erected a building thereon, and are using the party wall in question for its entire length.

Upon the facts found, the court held that the defendant took her interest in the land as assignee of Steele, charged with the obligation to pay for one-half the party wall in question, by virtue of the original contract with Steele, and in conformity with the decree of the probate court.

1. It is evident that the defendant stands in Steele's shoes as respects the enforcement of the contract. Her lessees are in possession under her, and she is bound to protect them. The wall is embraced in their lease, which contains no covenant releasing her or binding them in respect to the obligations of the contract. She is, by her tenant, enjoying the possession of the wall and the rents accruing therefrom. *Scott* v. *McMillan*, 16 N. Y. State Reporter, 795, (City Ct. N. Y.), (4 N. Y. Supp. 435.) This was a sufficient "user" of the wall, within the contract.

2. The evidence sufficiently identifies the party wall so assigned to defendant with the one contracted for by Steele, and erected by Small as above stated.

3. The covenant in respect to the party wall in the original contract was not merged in the lease. It is obvious that the stipulations in respect to the lease were not the sole purpose of the contract, and other provisions therein, including that in respect to the party wall, were clearly independent, and intended to survive the execution of the lease.

v.54M.—32

4. The adjoining owners of a party wall and the land covered by it have each an easement in that portion thereof owned by the other by virtue of the party-wall contract, which runs with the land, but this is entirely independent of the question of the original cost or expense incurred in erecting it. It was competent for the parties to provide how, when, and to whom the cost of his portion thereof should be paid by either party, and to make the covenant to pay therefor a mere personal covenant, with the covenantee, and severable from his ownership of the land; and this was clearly the intention of the parties in this case, to be gathered from the language of the contract. Small was to go on and build the party wall at his own cost and expense. The wall, when so erected, would stand for the mutual benefit of the adjoining owners, but it was agreed that Steele or his assigns should pay to Small the value of one-half of the wall whenever he (Steele) or his assigns should use the same. This covenant was personal to Small, as much so as if Steele had made the covenant with the contractor who built the wall to pay for his half at some future time. The right of action remained in Small, notwithstanding the transfer of the leasehold interest, and passed by assignment to the plaintiff.

5. The court, in the exercise of its equitable powers, adjudged the amount due plaintiff to be a lien upon the interest of the defendant in the real property aforesaid, assigned to her by the probate court, "subject to the party-wall contract."

In adjusting the rights of the heirs of Steele in the distribution of his estate, we see no reason why the land in question might not be charged with the expense of the wall built upon it; and, as the decree of the probate court has been allowed to stand without question, it must be held binding on the defendant, and she took the property charged with the obligations of the contract.

Judgment affirmed.

(Opinion published 56 N. W. Rep. 170.)