FAIR BUILDING COMPANY ET AL. *v.* WINEMAN REALTY COMPANY ET AL.

[No. 12,239. Filed April 26, 1927. Rehearing denied February 23, 1928. Transfer denied June 21, 1928.]

*Edward B. Raub* and *Matson, Carter, Ross & McCord,* for appellants.

*Martin M. Hugg, Joseph B. Kealing, James E. Rocap* and *John J. McShane,* for appellees.

McMahan, C. J.—On February 3, 1910, Michael Clune and Mary Adler, being the owners of adjoining parcels of land in the city of Indianapolis, their consorts joining, entered into a written agreement reciting that a dispute had arisen in respect to boundaries of their properties and that Clune was desirous of erecting a building upon the unoccupied part of his lot, and that, for the purpose of determining such dispute and defining their rights in relation to the boundary line and party wall, they agreed, in so far as material, as follows:

"(1) It is mutually agreed that the said Mary Adler shall pay to said Michael Clune on the execution of this contract the sum of seventy-five ($75) dollars in full of any and all claims and demands by reason of the dispute concerning the boundary line and for replacing the building of said Mary Adler in a condition as good as the same are now.

"(2) It is further agreed that the wall now dividing the buildings of said owners shall become and remain a party wall and the common property of said owners, their respective heirs and assigns, so that either of them shall be at liberty to use said wall by inserting timbers or other materials up to but not beyond a vertical line drawn through the center and along the entire length of said wall or otherwise to use the said wall in any manner that may (not) interfere with the equal use of the other half of the wall by the other owner. . . .

"(4) It is further agreed that the said Michael Clune shall extend the present wall the entire depth of said property, using the center line of the present wall extended as a center line of the extension, said extension to be built in a substantial and workmanlike manner and shall conform in all respects to the laws regulating the construction of buildings in

force at the time, and he shall take all due measures, by carrying up flues or otherwise, to cause the least possible inconvenience to the said Mary Adler, her heirs or assigns, *and do whatever work may be necessary to leave the buildings of said Mary Adler in as good condition as the same are now, except that said Clune shall not be required to paint the walls or woodwork of any of the rooms of any building which may be partially removed for the purpose of building said wall; said Michael Clune shall provide all temporary partitions, bracings, underpinnings and supports which may be required to render said Mary Adler's building habitable during the construction of said extension, saving Mary Adler free of any expenses whatever by reason thereof.*   (Our italics.)

"(5)   Whenever the said Mary Adler, her heirs or assigns, shall use the whole or any part of said extension of said party wall to be built as herein provided she shall pay to said Michael Clune or those claiming under him one-half of the value at the time of use of such extension, including the foundations under the same, including also piles or other foundations or substructures and coping.

"(6)   If any dispute shall arise between the owners of said party wall at the time such wall is used by said Mary Adler, or her heirs or assigns, as to the value then of said wall, then such difference shall immediately after it has arisen be referred to the final determination and award of two competent persons as arbitrators, one of whom shall be chosen by the owners of each of the respective parcels, and if the two arbitrators so named can not agree, the two shall name a third, and the decision of any two of said arbitrators as to said value shall be final and binding upon the then owners.

"(7)   Either party may add to said wall in height, depth or thickness, in case of damage may repair, or in case of destruction may rebuild said wall or any addition thereto, carrying up flues and the like to leave the other party as near as may be in as good condition as before, and use good materials and workmanship and conforming to the building laws,

and doing work on his own side if the other side is built upon, and in case of repairs half of the costs of such repairs shall be paid to the party making the same by the owner of the other parcel on demand, providing such repairs are made after the said Mary Adler, her heirs or assigns, has paid for her half as herein provided. No addition to the thickness is to be made by either on the land of the other without the consent of such party.

"(8) Said parties mutually covenant for their respective heirs and assigns, each to and with the others, her heirs, representatives and assigns, to observe the above agreement and that the covenants herein contained shall run with the land, but no owner is responsible except for his acts or defaults while owner." ·

Shortly after the execution of this contract, Clune built the party wall as therein agreed. Appellee M. Clune Realty and Investment Company, hereafter designated "Clune company," through mesne conveyances, became and still is the owner of the parcel of land formerly owned by Clune and of all of his rights and interest in the party wall under said agreement.

On December 31, 1915, Julius Adler, being the owner of the parcel of land formerly owned by Mary Adler, demised and leased the Adler tract to Leo and Louis Traugott, for the period of ninety-nine years from January 1, 1916. In September, 1916, Louis Adler, by warranty deed, conveyed the tract to Joseph Wineman, subject to the ninety-nine-year-lease. Joseph Wineman conveyed the tract to the Wineman Realty Company in 1917. In December, 1922, the Traugotts assigned their lease to the Fair Realty Company, which, in turn, assigned the same to appellant Fair Building Company, and which company soon thereafter tore down the buildings on the Adler land and constructed thereon a three story business block, attaching the same to the party

wall which forms the west wall of the building so constructed by the Fair Building Company.

This is an action by the Clune company to recover from appellants Fair Building Company and the two Traugotts, as lessees, and the Wineman Realty Company, as owner, of the Adler tract, one-half of the value of the party wall built by plaintiff's grantor Clune under the party-wall agreement. The defendant Wineman Realty Company filed a cross-complaint against its codefendant, Fair Building Company and Leo and Louis Traugott. This cross-complaint sets out the facts as to the ownership of the two tracts by Mrs. Adler and Clune, the execution of the party wall agreement, the execution of the ninety-nine-year-lease, the assignments thereof and the erection of the building by the Fair Building Company and that the latter company and the Traugotts, at the time of the erection of said new building and ever since, have been in the full possession and enjoyment thereof under and by virtue of said lease and the assignments thereof. Copies of the party-wall agreement, the lease and assignments thereof being made a part of the cross-complaint.

Clause 9 of the lease made provision for the tearing down and removal of the old building on the Adler lot, and the erection of a new building by the lessees, the lessees therein agreeing "to save harmless the lessor from any damage to the owner of adjoining property by reason of the erection upon said real estate of any improvement." Clause 11 of the lease provided for the execution by the lessees of a bond of indemnity in case of the removal of any building other than those on the lot at time of execution of the lease and the erection and construction of any building other than the first one to be erected after the making of the lease; that the erection of the building by the Fair company required and called for an indemnity bond to be given the latter

company; that pursuant to the terms of said lease, the Fair Building Company, as principal, and Leo and Louis Traugott, as sureties, executed their bond to the cross-complainant Wineman Realty Company, in the penal sum of $38,500, conditioned that the building company should faithfully perform the terms of the lease, and satisfy all claims and demands owing to any persons growing out of the erection of said building and indemnify and save harmless the Wineman company from all costs and damages of any nature growing out of the erection of the improvement and would reimburse and repay the latter all outlay and expense it might incur in making good any default; that the Fair Building Company had not paid the Clune company one-half of the value of the party wall used by it and refused to do so. The prayer was that the Fair Building Company and the Traugotts be adjudged liable to the plaintiff for the payment of one-half the value of said party wall.

The indemnifying bond given by the Fair Building Company and the Traugotts to the Wineman Realty Company, after reciting that the former company had a ninety-nine-year-lease on the Adler lot and also on the lot west of it, a one-story building being on the west lot, and which building it desired to improve by adding another story and, in connection therewith, desired to extend and enlarge such store room by erecting a new building on the Adler lot, so that the building when completed would cover the lots in both leases, bound themselves to the Wineman company in the sum of $38,500, to perform all the conditions of the Adler lease and satisfy all claims and demands owing to any person or growing out of the erection of said building and indemnify and save the Wineman company harmless from all costs and damages of any nature growing out of the erection of such building, and pay any and all damages to any person arising out of the erection of such building.

There was a judgment in favor of the plaintiff Clune Realty and Investment Company against the Wineman company, owner of the Adler lot, for $3,135. There was also a judgment on the cross-complaint of the Wineman company in favor of that company and against the Fair Building Company and the two Traugotts in the sum of $3,135. The Wineman company and the Fair company filed separate motions for a new trial and the two Traugotts filed a joint motion for a new trial. The specifications in each of said motions being that: (1) The decision was not sustained by the evidence; and (2) that it was contrary to law. Each of these motions being overruled, this appeal follows.

The Wineman company also filed a motion to modify the judgment so as to make the Fair company and its sureties, Traugott and Traugott, primarily liable to the plaintiff for the amount of the judgment, $3,135, and to make the Wineman company secondarily liable on said judgment to the plaintiff. This motion was also overruled.

Appellants Fair company and the Traugotts say no liability can be fastened on them because: (1) By the terms of the contract sued on, the right to receive compensation and payment for the party wall was *personal* to Michael Clune, the original contractor and first builder, and those claiming under him (not his successors in title); (2) by the express terms of the agreement, the obligation to pay did not run with the land but was a *personal* covenant of Mary Adler, the other party to the contract; (3) even though the right to receive and the covenant to pay ran with the land, still, under the undisputed evidence, a use had been made of the wall while Mary Adler was the owner, which, by the terms of the contract, ripened the covenant into a chose in action at that time; and (4) in any event, the covenant, howsoever it may be construed, was never

imposed upon appellant lessees, because there was no privity of estate between appellants and the original owners or those contracting, nor does the evidence show any express assumption on the part of appellants of any covenant or liability imposed in the contract sued on.

The Wineman Realty Company, in support of its assignment of error, also insists: (1) That the right to receive payment for the party wall was personal to the first builder Clune and did not follow the land to the Clune Realty Company as his successor in title; and (2) that by the terms of the party-wall agreement, Mary Adler bound herself alone to pay and that the agreement to pay is personal to her and does not run with the land.

In so far as the contentions of appellants and the Wineman company are common, they will be considered together. The party-wall agreement was properly acknowledged and recorded in the recorder's office and, being in their chain of title, appellants and the Wineman company, at least had constructive notice of its provisions. Reference is made to that part of the agreement which provides that, whenever Mrs. Adler, her heirs or assigns, shall use the whole or any part of the extension of the party wall to be built as therein provided, "she shall pay to said Michael Clune or those claiming under him one-half of the value at the time of such use," and, from the use of the expression "she shall pay" to Michael Clune or "those claiming under him," it is argued that the agreement was a personal agreement of Mrs. Adler to pay and that neither the agreement to pay nor the right to receive payment ran with the land.

In arriving at the intention of the parties and the construction of the contract we must look to the whole of the contract. Clause 6 of the contract provides that if any dispute shall arise between

the *owners* of the party wall at the time such wall is used by Mrs. Adler or her heirs or *assigns* as to the then value of the wall, the dispute shall be submitted to two arbitrators, one of whom shall be chosen by the *owner* of each of the respective parcels. If the two arbitrators thus chosen cannot agree, provision is made for the selection of a third, and decision of any two of the arbitrators is made binding on the "then owners." Clause 7 makes provision for extending the height of the wall, for making repairs and requiring the "owner of the other parcel on demand" to pay one-half the cost of the repairs, while according to clause 8, hereinbefore quoted, each of the parties to the agreement covenanted and agreed for themselves, their heirs and assigns to observe the agreement and that the covenants contained in the agreement should run with the land, no owner being responsible except for his acts or defaults while owner.

Appellants cite *Bloch* v. *Isham* (1867), 28 Ind. 37, and *Conduitt* v. *Ross* (1885), 102 Ind. 166, 26 N. E. 198, as being decisive of their contention that the covenant to pay and the right to receive payment are personal to Clune and Mrs. Adler. We do not regard the Bloch case as in point. That was a suit by the grantee of the first builder to recover from the second builder one-half of the "cost" of a party wall, and, as was said in the Conduitt case, in distinguishing the Bloch case:

"The covenant, as it is there recited by the court, is: 'Schenck and Isham . . . entered into a written agreement, whereby Schenck acquired the right to build one of the walls of a brick store, then in process of erection on his own lot, with one-half of its thickness resting on the lot of Isham; and Isham acquired for himself, his heirs or assigns, the right to use said wall by joining a building thereon, and agreed for himself and them to pay one-half of the original cost of said wall, when he or they should

use the same.' In effect, Isham personally agreed for himself and his grantees to pay when he or they should use the wall. In the case before us Hauck made no such agreement. It may be said moreover, that the case of *Weld* v. *Nichols,* 17 Pick. 538, which is regarded as conclusive of the question there involved, will be found to have a very remote, if any, bearing on the question we are considering under this agreement."

*Conduitt* v. *Ross, supra,* is, in our judgment, decisive as to the question of whether the covenant to pay runs with the land. It is, however, decisive against the contention that the covenant of Mrs. Adler to pay did not run with the land. In that case, Mrs. Ross and John Hauck, being the owners of adjoining lots entered into an agreement wherein Mrs. Ross was given the right to build one-half of the wall of a brick building on the Hauck lot, and Hauck, on behalf of himself, his heirs and assigns, agreed that whenever he, his heirs or assigns should, in erecting any building on the Hauck lot, use any part of the wall, *Mrs. Ross* should be paid one-half of the original cost of the wall, and that Hauck, his heirs or assigns should not use the wall to be erected by Mrs. Ross until the value and cost of one-half thereof should be ascertained, and "paid or tendered to said Julia A. Ross." It was there held that the covenant to pay ran with the land and that Conduitt, a subsequent grantee of Hauck, was liable to Mrs. Ross for one-half of the original cost of the wall, though its then value was, by reason of a fire, less than its original cost. In discussing whether the covenant conveys or grants an interest or right in land, the court said:

"When an instrument conveys or grants an interest or right in land, and at the same time contains a covenant in which a right attached to the estate or interest granted is reserved, or when the grantee covenants that he will do some act on the estate, or

interest granted, . . . either as respects his remaining interest in the lands out of which an interest is granted, or lands adjacent thereto, such covenant is one which may become annexed to and run with the land, and bind its owners successively. When such grant is made, and contains a covenant so expressed as to show that it was reasonably the intent that it should be continuing, it will be construed as a covenant running with the land. A covenant which may run with the land must have relation to the interest or estate granted, and the act to be done must concern the interest created or conveyed."

Paraphrasing the language of the court in the Conduitt case, by the contract under consideration in the instant case, Clune acquired the right to enter upon the Adler lot and erect and permanently maintain thereon a party wall. This was a grant to him of an interest in land, and was of such a character that a perpetual covenant might be annexed to it. In consideration of this grant to him, he covenanted to do an act beneficial to the remaining interest of Mrs. Adler; that act was the erection of a wall so situated as that one-half of it should rest on the margin of each lot, thus devoting each estate to the mutual support of the party wall. Clune covenanted that he or those claiming under him should be reimbursed one-half of the value of the wall. This agreement created what has been aptly termed "mutual cross-easements" in favor of each other in the lot of the other, and was an agreement mutually beneficial to the property of both parties. It contained all the elements necessary to a covenant capable of running with the land. It is apparent from a reading of the contract that it was the intention of the parties that the covenant to pay and the right to receive payment should run with the land. While the agreement to pay as used in clause 5 may be said to be personal to Mrs.

Adler, the provisions in clauses 6 and 7, clearly and unequivocally show it was the intention that payment was to be made by the person owning the Adler lot, when use was made of the party wall, to the then owner of the Clune lot. Mrs. Adler agreed for herself and her grantees that she or they would pay to Clune or his grantees when she or her grantees made use of the wall. And we hold that a right to receive as well as a covenant to pay may run with the land, and that the right to receive and the covenant to pay in the contract involved in the instant case ran with the land. In *Pillsbury* v. *Morris* (1893), 54 Minn. 492, like *Conduitt* v. *Ross, supra,* and *Bloch* v. *Isham, supra,* the right to receive was personal to the first builder and did not enure to the benefit of his grantee. See, also, *Adams* v. *Noble* (1899), 120 Mich. 545, 79 N. W. 810; *Roche* v. *Ullman* (1882), 104 Ill. 11; *Mackin* v. *Haven* (1900), 187 Ill. 480, 58 N. E. 448; *Kimm* v. *Griffin* (1896), 67 Minn. 25, 69 N. W. 634, 64 Am. St. 385; *Mott* v. *Oppenheimer* (1892), 135 N. Y. 312, 31 N. E. 1097, 17 L. R. A. 409; *Southworth* v. *Perring* (1905), 71 Kans. 755, 81 Pac. 481, 82 Pac. 785, 2 L. R. A. (N. S.) 87; *Loyal Mystic Legion* v. *Jones* (1905), 73 Nebr. 342, 102 N. W. 621. To same effect, see *Millikan* v. *Hunter* (1913), 180 Ind. 149, 100 N. E. 1041.

The next contention of appellants and the Wineman company is that even though the covenant to pay runs with the land, the plaintiff is not entitled to recover against either of them. In support of this contention, they refer to clause 5, wherein it is provided that whenever Mrs. Adler, her heirs or assigns, shall use the whole or any part of said extension of the party wall, she shall pay, and insist that the evidence without any conflict shows that immediately after the wall was built, Mrs. Adler used it, and that the obligation to pay and the right to recover ripened when the wall was first used

and that the obligation to pay cannot be shifted to another unless such other person contracted to assume it.

The undisputed evidence shows that at the time the party wall agreement was entered into, there was a brick building on the north end of the Adler lot fronting on Washington street. The west wall of this building is the wall mentioned in clause 2 of the agreement as the wall then "dividing the buildings." The party wall constructed by Clune extended south from that wall to Pearl street. There was also at that time a brick residence on the Adler lot fronting on Pearl street and a kitchen in the rear of the building fronting on Washington street. By a survey made before the agreement was entered into, it was discovered that this kitchen and the residence on Pearl street were over the line and in part on the Clune lot, so that, in order to build the party wall on the dividing line, it was necessary either to move such buildings or cut off the west end of each of them, and accordingly the west end of each of the buildings was cut off and the said two buildings on the Adler lot constructed into the party wall at the time it was built, the joists of these buildings being allowed to rest in the party wall as it was being built. The inference to be drawn is, that the fact that these buildings were in part on the Clune lot and had to be moved or the west end cut off was the reason why it was provided in clauses 1 and 2 that the Adler building was to be placed in as good a condition as it was in when the contract was executed without any expense to Mrs. Adler.

Appellants insist that when the buildings then on the Adler lot were attached to the party wall, a use was made of the party wall by Mrs. Adler, so that, under clause 5 of the contract, she then became liable to Clune for one-half of the then value of the party wall; that a chose in action then existed in favor

of Clune, the right to collect and the obligation to pay being personal to Clune and Mrs. Adler, and did not run with the land. The parties at the time they entered into the contract knew that the west walls of the residence and kitchen had to be torn out and that, in the construction of the party wall, such buildings would have to be supported by the proposed party wall and that some one would have to bear the expense. It is clear that Clune was to do whatever was necessary in that behalf, and, as a part of the consideration for so doing the work referred to in clauses 1 and 4, Mrs. Adler was to and did pay him $75. Had it been the intention of the parties that the act of Clune in attaching the Adler buildings to the party wall was to be such a use of the wall as would render Mrs. Adler liable to at once pay Clune one-half of the value of the wall at the time of the construction of the party wall, they doubtless would have so expressed themselves in clear and certain language. The only inference to be drawn from the contract, when viewed in the light of the then circumstances, is that Mrs. Adler was not to do anything herself in the way of attaching the residence and kitchen to the party wall; that whatever was to be done in that regard was to be done by Clune and was not to be and was not considered by them as such a use as would require her at that time to pay one-half the then value of the wall to Clune.

Appellants Fair Building Company, holder of the ninety-nine-year-lease, and the Traugotts, sureties on the indemnity bond given by the former to the Wineman company, next insist that even though the latter company, as owner of the fee, is liable to the Clune company, appellants are not liable to appellees. This contention is based upon the theory that there is no privity of estate or assumption of contract on the part of the Fair Building Company, and that the

use of the party wall was the happening of an event which ripened the obligation of the Wineman company to pay. The party-wall agreement was duly recorded a short time after its execution, and thereafter all parties were bound to take notice of its provisions. While the evidence is that the Traugotts did not have actual knowledge of its existence when the ninety-nine-year-lease was executed, they learned of its existence a couple months thereafter. One of the said lessees, Louis Traugott, was president of the Fair Realty Company and the Fair Building Company, and the other lessee, Leo Traugott, was at all times the secretary and treasurer of both the Fair Realty Company and the Fair Building Company. When the latter companies took the assignment of the lease, they did so with notice of all of the terms and conditions contained in the party wall agreement and in the ninety-nine-year-lease.

Article 9 of the lease authorized the lessees to erect a building on the leased premises, and the lessees agreed to save the lessor harmless from any damage to the adjoining owner by reason of the erection of such building. In article 11, the lessees agreed to pay any and all loss, costs or damage which the lessor might sustain by reason of tearing down the old improvements and the erection of new improvements. The lessees also agreed that, before constructing any new buildings, they would give a bond to the lessor to indemnify the latter from loss by reason of mechanics' liens, and for the keeping of the real estate and buildings, both old and new, free from liens, and to save the lessor harmless from all damages whatsoever as thereinbefore set out in the lease and for the carrying out of this clause of the contract in every respect. The Fair Building Company, after accepting the assignment of the lease, and before commencing to remove the old buildings and the erection of the new building, gave to the

then owner of the Adler lot, the Wineman company, a bond to save the Wineman company harmless from all costs and damages of whatsoever kind or nature growing out of the erection and construction of the new buildings and to reimburse and repay the owner all outlay and expense which the owner might incur. It is clear from the lease and bond that the Wineman company, owner of the lot, was not to be liable in any way for anything connected with the construction of the building by the Fair Building Company and that if the Wineman company became liable for any loss, cost or damage of any kind by reason of the act of the Fair Building Company, on account of the erection of such building, the lessees would pay the same and hold the owner harmless. This being true, the court properly rendered judgment against the building company and the Traugotts, and in favor of the Wineman company for the one-half value of the wall.

Judgment affirmed.

Dausman, J., absent.