No. 9005.

## GRABER, GUARDIAN, v. DUNCAN.

DEED.—*Taxes.*—*Covenant.*—*Accord and Satisfaction.*—A stipulation in a deed of real estate by the grantor to pay certain taxes thereon is a personal contract with the grantee, and not a covenant running with the land; and an accord and satisfaction thereof to the grantee while he holds title discharges the contract, so that his vendee can not recover for its breach.

From the Clay Circuit Court.

*W. V. Burns,* for appellant.

NIBLACK, J.—On the 21st day of July, 1876, Samuel F. Duncan and Giles W. Duncan, for the expressed consideration of $1,600, sold, and by warranty deed conveyed, to one Patrick O'Sullivan, a forty-acre tract of land in Clay county. The deed contained an express stipulation on the part of the grantor to pay all taxes and claims due on said tract of land up to the year 1876. On the 1st day of March, 1878, O'Sullivan conveyed the tract of land thus purchased by him, to Robert M. Catterson, by quitclaim deed. Giles W. Duncan died during the year 1878.

There was due upon and outstanding against this land on the 1st day of January, 1876, for taxes and penalty, interest and costs accrued thereon subsequently, the estimated sum of $134.35, which it was alleged the Duncans, as well as the O'Sullivan, had thereafter failed to pay. After the land was conveyed to Catterson, William Graber, as his guardian, was compelled to pay, and did pay, that sum to the treasurer of Clay county, to prevent the sale of the land for unpaid taxes.

This action was brought by Graber, as the guardian of Catterson, against Samuel F. Duncan, the surviving grantor, to recover the amount of taxes so paid by him, the said Graber, as such guardian, upon a complaint alleging the facts set forth as above.

The defendant answered, admitting the execution of the deed, with the stipulation therein for the payment of taxes, as

stated in the complaint, but averring that after its execution, that is to say, on said 21st day of July, 1876, he and the said Giles W. Duncan executed to O'Sullivan, their grantee, their promissory note for the sum of $124.19, payable on the 1st day of November, 1876, in full satisfaction of the stipulation in the deed for the payment of taxes on the land conveyed; that afterwards, and while O'Sullivan was still the owner of such land, said note was fully paid to him, upon which the defendant was released from all further liability on said stipulation for the payment of taxes thereon.

The plaintiff demurred to this answer; but his demurrer was overruled, and he replied in general denial. A trial by the court resulted in a finding and judgment for the defendant.

Error is assigned upon the overruling of the demurrer to the answer, and that presents the only question to which our attention has been directed in the argument.

The appellant argues that the stipulation for the payment of taxes contained in the deed constituted a covenant running with the land, and for the payment of the taxes embraced within its provisions, to the treasurer of Clay county; that hence the payment of the amount of such taxes to O'Sullivan, even though he may then have been still the owner of the land, can not be construed to have been a payment of such taxes within the meaning of that stipulation.

An agreement to discharge an existing lien or incumbrance on the land conveyed, although contained in the deed, does not create a covenant running with the land. Such an agreement amounts ordinarily to a mere contract to do a particular thing, within a specified or a reasonable time, from a breach of which damages may result to the grantee, and not to a covenant annexed to or connected with the realty in such a way as to run with and be appurtenant to it. 2 Washb. Real Prop. 708; 2 Hilliard on Real Prop. 390; *The Junction Railroad Company* v. *Sayers*, 28 Ind. 318.

The stipulation on which this suit was based was consequently a merely personal covenant, which O'Sullivan had

·the right to insist upon the performance of within a reasonable time, or from the obligations of which he might have released the Duncans at any time while he remained the owner of the land to which the stipulation related.

The answer of the appellee set up an accord and satisfaction of the obligation assumed by him and his co-obligor to pay the taxes specified in the stipulation, and what was on their part a substantial compliance with their agreement to pay such taxes. .

The facts averred showed that O'Sullivan, while continuing to be the owner, had received full compensation for the amount which the land was diminished in value by reason of the unpaid taxes which stood charged against it prior to 1876, and that was the fair equivalent of all he was entitled to demand of the Duncans under the stipulation. See *Spencer's Case* in 1 Smith's Lead. Cas. 115.

In our opinion, therefore, all right of action against the appellee, which might have accrued upon his stipulation to pay taxes, had been fully discharged before the plaintiff's ward became the owner of the land.

It follows that the demurrer to the appellee's answer was correctly sustained.

Whether, if the Duncans had not paid the taxes stipulated to be paid by them, the appellant's ward would have been subrogated to O'Sullivan's right of action against them, is a question we have not considered, and concerning which we have not assumed to decide anything in this case.

The judgment is affirmed, with costs.