Wells v. Benton et al.

Filed Dec. 21, 1886.

———————◆———————

No. 13,262.

## WELLS v. BENTON ET AL.

CONVEYANCE.—*Mistake.*—*Equitable Title.*—*Judgment.*—*Sheriff's Sale.*—*Husband and Wife.*—Where a purchaser pays full consideration for, and goes into possession of, a tract of two hundred acres of land, but by mistake the deed to him describes sixty acres only, a subsequent conveyance to his wife, at his request, upon discovering the mistake, of the remaining one hundred and forty acres, vests in her, and a conveyance from her will vest in her grantee, a complete title, free from intervening judgments recovered against the grantor, and all claims of title thereunder, as such judgments could not become effectual liens as against the actual owner of the land.

SAME.—*Agreement of Grantee to Pay Judgments which are Not Liens.*—*Consideration.*—*Covenant Running with Land.*—A stipulation in the deed to the wife that, as a consideration for the conveyance, she is to pay certain judgments recovered against the grantor after the sale to her husband, is without consideration, and does not have the effect to enlarge or extend

the lien of the judgments, nor is it a covenant running with the land which can bind it in the hands of her grantee.

JUDGMENT.—*Lien Can Not be Created by Agreement.*—*Prior Equities.*—A judgment is purely a statutory lien. It can not be made a lien, so as to be enforced by execution, by the mere agreement of the parties, nor can it prevail as against prior equities.

DEED.—*Covenant Running with Land.*—A covenant which may run with the land must have relation to the interest or estate granted, and the act to be done must concern the interest created or conveyed.

From the Jackson Circuit Court.

*W. K. Marshall* and *F. Brannaman,* for appellant.

*R. Applewhite, B. H. Burrell* and *J. F. Applewhite,* for appellees.

ZOLLARS, J.—Appellant, in his complaint, and appellee Benton, in his cross complaint, each sought a quieting of his title against the other, in and to the one hundred and forty acres of land in dispute.

The court below made a special finding of the facts, and upon them pronounced its conclusions of law, and rendered a decree quieting the title to the land in appellee, upon his cross complaint.

It appears from the facts so found, that on the 27th day of August, 1865, one Wright owned two hundred acres of land, and by a warranty deed, executed on that day, conveyed it to Charles W. Conner, and put him in possession. On the 23d day of October, 1865, Conner sold the land to one Alexander M. Thompson, received from him full payment therefor, and executed to him a warranty deed, by which he intended to convey to him the whole of the two hundred acres of land, but by the error and mistake of the parties, and the scrivener, the description written in the deed described but sixty acres, there being no description that covered the remaining one hundred and forty acres of the two hundred acres intended to be conveyed. Thompson, ignorant of the mistake, accepted the deed and went into possession of the

whole two hundred acres of land, and held possession of it until 1873.

On the 25th day of October, 1871, D. J. Harrall recovered a judgment in the common pleas court against Thompson. On the 2d day of November, 1871, an execution was issued upon the judgment and levied upon the whole two hundred acres of land as the property of Thompson. The execution was returned on the 29th day of April, 1872, with an endorsement that the property had not been sold for want of time. On the 10th day of May, 1872, a *venditioni exponas* was issued, and the whole of the two hundred acres was sold by the sheriff, on the 8th day of June, 1872, as the property of Thompson, and was purchased by James C. Wells. He paid the purchase-money, and received a sheriff's certificate of purchase. In June, 1873, Wells entered into the undisputed possession of the whole of the two hundred acres, and held that possession until 1879, when he assigned his certificate of purchase to Samuel T. Wells, plaintiff below, and appellant here. On the 27th day of February, 1879, appellant received a sheriff's deed for, and went into the possession of, the whole two hundred acres, sold as aforesaid, and continued in that possession until the trial of this case below.

The mistake in the description of the land in the deed from Conner to Thompson was not discovered until some time in the year 1877. In February, 1879, after proper requests from appellant, Conner refused to sign or execute any deed in the way of correcting the mistake in his deed to Thompson. On the 26th day of May, 1879, at the request of Alexander M. Thompson, Conner, for a named consideration of $750, executed to Lucy A. Thompson, wife of Alexander M. Thompson, a warranty deed for the one hundred and forty acres of land which by mistake had been omitted from his, Conner's deed, to Alexander M. Thompson, as above stated. It was recited in the deed to Lucy A., that said consideration was to be paid and discharged by her, by the payment of two judgments against Conner, one in favor of

George V. Benton, for $263, of date May 19th, 1868, and the other in favor of George V. Benton, for $516, of date. May 7th, 1875.

At the time this deed was executed, the one hundred and forty acres, with the balance of the two hundred acres of land, were in the possession of appellant, who was claiming title thereto by virtue of the sheriff's sale as above stated.

After the death of Alexander M. Thompson, leaving Lucy A. as his widow, and on the 22d day of April, 1884, she, by a quitclaim deed, conveyed to appellant all of her right, title and interest in and to the whole of the two hundred acres of land, one hundred and forty acres of which had been conveyed to her by Conner as above stated.

These are the facts upon which appellant predicates his claim of title.

Appellee Benton's claim of title rests upon the following state of facts, found by the court below: On the 7th day of May, 1875, George V. Benton recovered a judgment against Conner, the grantor of Alexander M. Thompson, in the circuit court, for $516, being one of the judgments mentioned in the deed from Conner to Lucy A. Thompson.

On the 29th day of May, 1884, an execution was issued upon that judgment, and was levied upon the one hundred and forty acres of land which Conner had sold to Alexander M. Thompson, as a part of the two hundred acres, but which by mistake, as above stated, was not described in the deed from Conner to Alexander M. Thompson.

On the 28th day of June, 1884, the sheriff sold the one hundred and forty acres to appellee Benton, who, having paid the purchase-money, received from the sheriff a certificate of purchase.

On the 14th day of May, 1885, Benton received a sheriff's deed for the one hundred and forty acres. At the time of this sheriff's sale, appellant was in the sole and exclusive possession of the land, claiming title thereto as above stated, and on the day of the sale gave notice to appellee that he claimed

to own the land in fee simple, free from all liens on account of the Benton judgments, and that he would defend his claim and title by law against any one who might buy the land.

It will be observed that appellant's claim of title rests upon the sale and deed from Conner to Alexander M. Thompson in 1865, with the attendant mistake in the description; the sheriff's deed to appellant in 1879, resting upon a sheriff's sale in 1872, and a judgment taken against Alexander M. Thompson in 1871, after his purchase from Conner, and while he was in the possession of the land by virtue of that sale, but when the legal title was still in Conner; Conner's deed to Lucy A., wife of Alexander M. Thompson, made at the request of Alexander M. in 1879, and the deed from Lucy A. to appellant in 1884.

It will be observed, also, that the claim of title by appellee Benton rests upon a judgment taken against Conner in 1875, some ten years after he had parted with all interest in the land, having nothing left except the naked legal title; a sale upon that judgment in 1884, after the deed from Conner to Lucy A., and her deed to appellant, and a sheriff's deed in 1885.

The facts found suggest the following inquiries:

*First.* Did appellant acquire any title to the land in controversy through the sheriff's sale, based upon the judgment of Harrall against Thompson in 1871, when Conner still held the legal title thereto?

*Second.* Did appellant acquire any title to the one hundred and forty acres, through the deed from Conner to Lucy A. in 1879, and her deed to him in 1884?

*Third.* Did appellee acquire any title by his sheriff's deed in 1885, based upon the judgment against Conner in 1875?

As to the first inquiry, it is not necessary, for the purposes of this decision, to say more than that we leave the question there involved, where it was left by the case of *Conner* v. *Wells*, 91 Ind. 197, without any comment as to the correctness of the ruling in that case.

We pass then to the second and third inquiries above,. which we consider together. Alexander M. Thompson purchased from Conner the whole of the two hundred acres, in 1865, and paid to him the full amount of the purchase-money. By the mistake of the parties and the scrivener, the description in the deed was not such as to carry to Thompson the legal title to the one hundred and forty acres in dispute here. By the sale, the reception of the whole of the purchase-money, and the intended and attempted conveyance by the deed, Conner divested himself of all his interest in and to the whole of the land, retaining nothing but the naked legal title to the one hundred and forty acres, omitted from the deed by mistake. By the same sale, the payment of the purchase-money, and the deed, with the attendant mistake, Alexander M. Thompson became the legal owner of sixty acres of the land, and the equitable owner of the remaining one hundred and forty acres.

Before the discovery of the mistake, and while the land was in the possession of Wells, the Benton judgments were recovered against Conner. Those judgments became liens upon whatever interest Conner then had in the land, and nothing more. But, as we have seen, he had parted with all of his substantial interest. By the mistake of the parties and the scrivener, he held the naked legal title to the one hundred and forty acres, and nothing more.

At any time after the discovery of the mistake, and before Conner conveyed to Lucy A., Alexander M. might have coerced a reformation of the deed, both as against Conner and Benton, the judgment creditor, and thus have acquired the legal title to the one hundred and forty acres. And so, Conner might have conveyed the legal title to Alexander M., free from any liens of the Benton judgments.

Judgments are but general liens, and will not be allowed to stand in the way of prior equities. *Boyd* v. *Anderson*, 102 Ind. 217, and cases there cited; *Hays* v. *Reger*, 102 Ind. 524, and cases there cited; *Foltz* v. *Wert*, 103 Ind. 404,

and cases there cited; *Wright* v. *Jones*, 105 Ind. 17, and cases there cited; *Heberd* v. *Wines*, 105 Ind. 237, and cases there cited.

Conner voluntarily made a deed to Lucy A., at the request of her husband, Alexander M. He had a right to request this, the same as he had a right to request a deed to himself, and Conner had a right to make the deed as requested. That deed carried to Lucy A. the legal title; and having been made at the request of Alexander M., the owner of the equitable estate, the entire estate in and title to the land became vested in her, free from any judgment liens in favor of Benton, unless, as contended, the stipulation in Conner's deed to her, in some way, bound the land for those judgments.

We need not stop to inquire as to whether or not there was any consideration for the agreement and undertaking on the part of Lucy A., as evidenced by that stipulation, as to whether or not, she being a married woman, was bound by that agreement, nor as to whether or not the judgment creditor Benton could, in any way, take advantage of the agreement made with, and the promise made to Conner.

It is sufficient to say here, that judgment liens are not, and can not be, created by agreement. They are purely statutory liens, and if for any reason a judgment is not a lien upon a particular piece of land by force of the statute, it will not become such, so as to be enforced by execution, by the simple agreement of parties, such as that contained in the deed to Lucy A.

Neither was that stipulation in the deed a covenant running with the land, so as to bind it in the hands of appellant, as the grantee of Lucy A.

It amounted simply to a personal undertaking and agreement, on her part, to pay the agreed purchase-money in a particular way, viz., by paying off the Benton judgments. Benton's remedy, if he had any, was a personal action against her upon the agreement, or by an action to enforce a vendor's

lien. *Graber* v. *Duncan,* 79 Ind. 565; *Junction R. R. Co.* v. *Sayers,* 28 Ind. 318; *Bloch* v. *Isham,* 28 Ind. 37; *Taylor* v. *Owen,* 2 Blackf. 301.

In speaking of covenants that run with the land, it was said in the case of *Conduitt* v. *Ross,* 102 Ind. 166 : "A covenant which may run with the land must have relation to the interest or estate granted, and the act to be done must concern the interest created or conveyed."

But a concession, that the stipulation in the deed to Lucy A. was a covenant running with the land, would not lend any aid to appellee's title, because it would be necessary to enforce such a covenant by suit. It could not be enforced by issuing an execution upon the judgment.

. Our conclusion is, that upon the theory that appellant acquired nothing by his sheriff's deed, Lucy A. by her deed from Conner, made upon the request of Alexander M., became the absolute owner of the land free from any and all judgment liens in favor of Benton, and that, by her deed to appellant, she invested him with a complete title to the land, as against any claim of title that could arise out of the Benton judgment.

Upon the whole case, as made by the facts found, we are clearly of the opinion that the court below erred in its conclusions of law, and in rendering a decree quieting the title in appellee as against appellant; and that the conclusions of law and the decree should have been in favor of appellant as against appellee.

The judgment is, therefore, reversed, with instructions to the court below to restate its conclusions of law, as herein indicated, and to render a decree quieting the title to the land in dispute in appellant, as against appellee, and as against any and all claims of title set up and asserted by him, and as against all others of the defendants who are asserting titles adverse to appellant.

Filed Oct. 12, 1886.

## ON PETITION FOR A REHEARING.

MITCHELL, J.—Counsel for appellee insist that a rehearing of this cause ought to be granted, because the court erred in holding at the former hearing, that the stipulation in the conveyance from Conner to Mrs. Thompson, by which she covenanted to pay certain judgments which had been taken against Conner, and through which judgments the appellee claims title, did not have the effect to create or extend the liens of such judgment.

It is said, in effect, that because Conner held the legal title to the land in controversy, at the time the judgments were taken against him, such judgments became liens on the title so held, and because Mrs. Thompson afterwards accepted a deed from him, which contained a stipulation therein written, that she should pay these judgments, it therefore follows that the judgment liens which, prior to that time, affected only the naked legal title which Conner conveyed to her, were thenceforth effectual to bind her whole estate, both legal and equitable. This conclusion is said to follow from the fact that Alexander M. Thompson, who had from the first a complete and perfect equitable right to the land, agreed with Conner that the latter should convey the naked legal title which he held to Mrs. Thompson, and that by such agreement he recognized the judgments, and consented that they should constitute a valid and binding lien on the land.

This we understood to be the appellee's position from the beginning, and it seems to us the opinion given at the former hearing makes it clear that the position thus taken was not regarded by this court as tenable.

At the time the judgments, through which the appellee claims title, were taken, Conner had no interest whatever in the land, except that, without knowing the fact, he held the naked legal title, Thompson being in possession and both sup-

posing the latter had a perfect title. The authorities cited in the opinion abundantly show that under such circumstances, no effectual lien whatever attaches, as against the actual owner of the land, especially where he is in possession. This, as we understand the appellee's argument, is not disputed.

How, then, can it be said that the liens of the judgments are made more effective on account of the fact that without any consideration whatever Thompson consented that the title which Conner held should be conveyed to his (Thompson's) wife? There was no dispute but that the land belonged to Thompson. Conner set up no claim to it. He had no right in it. If he had conveyed the land to Thompson, under the circumstances, and exacted from him as a condition such an agreement as that contained in the deed, an agreement to pay for that which was confessedly his own, would any one claim that either Conner or his judgment creditors could have enforced the agreement thus exacted against Thompson?

Hence we say again, as we said in effect before, that no matter what voluntary agreement Thompson may have made with Conner, in order to get that which was without adverse claim or dispute his own, and no matter that without any consideration Mrs. Thompson accepted the deed with the stipulation referred to, the judgment liens were in no wise extended or enlarged.

If the agreement had been supported by an adequate consideration, Mrs. Thompson would have been held estopped to assert that the land was not bound by the judgments which it was stipulated she should pay, or if the appellee stood in the attitude of an innocent purchaser for value, like principles would afford him protection. In either case protection would be afforded, not because the liens of the judgments against Conner were extended by any subsequent agreement, but because by the subsequent agreement, supported by an adequate consideration, the appellant would have been estopped to show the facts.

There is nothing in the record which calls for an application of the doctrine of estoppel—there is no such pretence. The petition for a rehearing is overruled, with costs.

Filed Dec. 23, 1886.