POWELL ET AL. *v.* TOTTEN ET AL.

[No. 12,920.   Filed July·20, 1928.   Rehearing denied October 10, 1928.   Transfer denied December 10, 1931.]

*Homer Elliott, Carl H. Weyl, Charles W. Jewett, Walter L. Neible* and *Thomas E. Davidson,* for appellants.

*Isaac Carter, Ed. K. Adams, George H. Meiks, Williams & Pell* and *Pickens & Hamilton,* for appellees.

*Thompson State Bank, William H. Hammond, C. Severin Buschmann, William C. Kern* and *Leo M. Gardner, Amici Curiae.*

ENLOE, P. J.—The appellants commenced this action by filing a complaint in two paragraphs—one in replevin, and one seeking to have an equitable lien established as against the appellees Oscar L. Williams, trustee, and D. S. Makeever, William W. Baker and George H. Meiks, composing a creditors' committee for certain creditors of John J. Totten, Frank S. Totten, Albert Totten and George H. Hillis. The cause being at issue, was tried by the court, which made a special finding of the facts involved, and stated its conclusions of law thereon. The only alleged error presented and relied upon is in the conclusions of law stated.

It appears from these findings that, in the fall of 1925, John J. Totten and Frank S. Totten were partners doing business as "J. J. Totten and Son," buying, feeding and selling cattle; they were desirous at that time of purchasing certain cattle, but did not have the ready money with which to finance the said transaction, and applied to the Thompson State Bank of Edinburg, Indiana, for assistance; as a result of their negotiations, said bank loaned to them $3,938.86, to enable them to pay for the said cattle, taking their promissory note therefor, due in six months; at the same time and as a part of the said transaction, an agreement, denominated a "bill of sale," was executed by the said Tottens, covering 157 head of cattle, being the cattle paid for with said money so loaned, which cattle were described as "all now located and kept upon the farm occupied by Mr. Hillis, in Newton county, Indiana." The said instrument recited: "This bill of sale is given by me to said bank as a pledge to secure the payment of a certain promissory note given

by vendors to said bank on the 16 day of **October, 1925,** for the sum of thirty nine hundred thirty eight and 86/100 dollars, due in 180 days after date, with eight per cent interest after maturity and five percent attorney's fees." The said instrument further provided that the bank was to keep possession of said property until said note or any renewal thereof was fully paid, and that, upon the failure of the said makers to pay said note, the bank should have the right to sell said cattle at public or private sale, as the bank might deem best, without notice to the Tottens, and apply the proceeds to the payment of said note, rendering the surplus, if any, to the said Tottens; this agreement was duly signed, but was not acknowledged so as to entitle it to be recorded, and was not, in fact, recorded either in Shelby County, where the Tottens lived, or in Newton County where the cattle were located. The Tottens were also associated with Hillis in a number of transactions, as partners, and several different loans were procured from said bank with agreements similar to the one above noted; the Tottens also had a similar transaction with Powell Brothers and Company, and a similar agreement was entered into; these transactions covered an indebtedness of some $10,000; the notes executed to said bank were, before their maturity, duly indorsed by the bank to Powell Brothers and Company.

In February, 1926, the Tottens and Hillis, being heavily involved to divers persons and firms other than those above mentioned, and being then unable to pay and discharge such indebtedness, entered into an agreement with the above named Makeever, Baker and Meiks, acting as a committee for the creditors of said Tottens and Hillis whereby the said Tottens and Hillis conveyed to one Oscar L. Williams, as trustee, for certain named creditors *and such other creditors as should come in and accept said agreement* a large amount of property, both

real and personal, and including the cattle covered by said bills of sale. Shortly after the said assignment to Williams, this suit was commenced. The cattle covered by the said several "bills of sale" were, by agreement of the parties, sold by said trustee, and he now holds the funds derived therefrom subject to the final disposition of this case. The case was tried upon the paragraph of complaint which sought to enforce an alleged equitable lien as against said creditors for whose benefit the assignment was made.

The court found that neither the said bank nor the Powells ever at any time took possession of said cattle; that they were at all times in the possession and under the exclusive control of the Tottens and of Hillis; that they were cared for and fed at the expense of Hillis and the Tottens; that said cattle covered by said agreements were not in any way marked to distinguish them as the property of appellants, nor were they in any way set apart as the property of appellants, but all of said cattle were intermingled upon the lands of Hillis and Totten in Newton County, Indiana.

The findings further disclose that said committee, acting for said creditors of Totten and Hillis, agreed with the said Totten and Hillis, as a part of the consideration for the execution of said instrument of assignment to said trustee, that, of the lands owned by John J. Totten at the time of making said assignment, a certain farm containing 280 acres, together with all the "corn, grain, hay, farm products, farming implements, hogs, cattle, horses, and other personal property on said farm" should, by proper conveyance, be transferred to Mary M. Totten, wife of John J. Totten, free from the demands of these creditors; that Lot No. 9, in the town of Fairland, with all the household goods and other personal property in the dwelling house situate thereon, should likewise be transferred to said Mary M. Totten, free

from all demands of these creditors; and that, in consideration of said assignment, the said creditors would not bring any action against the said Tottens and Hillis to enforce their several claims, but would forbear to sue for any unpaid balance remaining after the said trustee had made distribution of the assets coming into his hands.

The appellants herein declined to join said creditors in said agreement and settlement, but stood upon their said several bills of sale, and brought this action, as before stated.

The conclusions of law stated by the court were, in substance, that the appellants were entitled to recover as against the Tottens and Hillis the sum of $11,945.50; that the appellants have an equitable lien upon the funds derived from the sale of said cattle to the extent that there may be any surplus due the Tottens and Hillis after the payment of the claims of the creditors who are parties to said agreement; that the appellants take nothing as against said trustee and the creditors whom he represents; and that appellants take nothing as against said creditors' committee, Makeever, Baker and Meiks.

It is well settled that a party may, by his contract, create a security, charge or lien against his property which a court of equity will enforce as an equitable lien against him and also against volunteers or claimants under him with notice of the agreement. 17 R. C. L. 604, §13, and authorities there cited. In this case, it may be conceded, and the court so stated as one of its conclusions of law, that, as between the Tottens and Hillis on the one hand and the said bank and the Powells on the other, the said several agreements before referred to had the effect of creating liens upon the said cattle therein severally described in favor of the said bank and Powell brothers, but the question to be answered herein is: Was this lien effective as against the

said Williams, trustee, and as against the said creditors?

While each of said instruments is denominated a "bill of sale," they, upon their face expressly declare that they are executed to secure the payment of money borrowed; that they were each executed to secure an indebtedness, and, under such circumstances, they were, even as between the parties thereto, simply chattel mortgages, and must be treated as such.

Our statute (§8055 Burns 1926) provides: "No assignment of goods by way of mortgage shall be valid against any other person than the parties thereto, where such goods are not delivered to the mortgagee or assignee and retained by him, unless such assignment or mortgage shall be acknowledged as provided in the case of deeds of conveyance, and recorded in the recorder's office of the county where the mortgagor resides, if he resides in this state, and if not a resident of the state, then in the county where said property is situated, within ten days after the execution thereof." Not only does it appear that said mortgage in this case was not acknowledged and recorded as required by law, but it also appears that the said creditors are not mere volunteers, but that they are in fact, purchasers of said property, they having given something of value for the execution of said instrument of assignment, and there is no contention, or even suggestion, in this record that the said creditors had any notice or knowledge of the lien of said bank and said Powells. Under these circumstances, the appellants are not in a position to assert their said lien as against the said creditors. Pomeroy, Equity (4th ed.) §1235; *Sawers Grain Co.* v. *Goodwine* (1925), 83 Ind. App. 556, 146 N. E. 837.

Upon the facts found, we hold that the court did not err in the conclusions of law stated.

Affirmed.

Dausman, J., absent.