NATIONAL MANUFACTURING & ENGINEERING COMPANY ET AL. *v.* FARMERS TRUST & SAVINGS BANK OF KOKOMO ET AL.

[No. 25,805. Filed April 5, 1933.]

*Conrad Wolf, Earl B. Barnes, C. W. Roll* and *George P. Shenk,* for appellants.

*Bell, Kirkpatrick, McClure & Elliott,* for appellees.

FANSLER, J.—The appellee, Farmers Trust & Savings Bank of Kokomo, Indiana, trustee, began this action to foreclose a mortgage on certain real estate of Herman O. Finch located at Kokomo, Indiana, and used in part, at least, as a coal yard. The appellee, Farmers Trust & Savings Bank of Kokomo, Indiana, filed a cross-complaint to foreclose a junior mortgage on the same real

estate. Appellants, with others, were made defendants to both actions. The appellants, National Conveyor Company and The Phillips Company, filed answers and a cross-complaint. The appellees, Farmers Trust & Savings Bank of Kokomo, Indiana, trustee, and Farmers Trust & Savings Bank of Kokomo, Indiana, demurred to the latter cross-complaint. The demurrer was sustained, and this ruling is assigned as the only error complained of.

The cross-complaint in question alleges that on the 18th day of May, 1923, the appellant, National Manufacturing & Engineering Company, entered into a contract with the appellee, Herman O. Finch, for the building, erection and leasing of a coal bunker system upon the real estate described in the mortgages which are sought to be foreclosed. The contract is made an exhibit to the complaint. The National Manufacturing & Engineering Company is named as the lessor, and the appellee, Herman O. Finch, owner of the real estate in question, is designated as the lessee in the contract.

The contract provides that the lessor leases to the lessee certain coal bunkers and equipment, specifically described, to be erected and installed upon lessee's real estate. The first section is as follows:

"1. The lessee warrants that he holds the fee simple title of a tract of ground approximately 115 by 268 feet, owned by H. O. Finch, located in the City or Town of Kokomo, County of Howard and State of Indiana, and described as follows: A sketch of said ground showing its railroad connections, the proposed location of the coal bunkers and equipment herein referred to, and other matters, is as set forth in the annexed schedule 'A'."

Section 2 provides that the lessee shall install a foundation for the bunker plant. Sections 3 to 6 provide that within thirty days after completing the founda-

tion the lessor shall deliver the bunkers on the premises and that they shall be ready for operation within three months. Section 7 provides that the lessee shall furnish a competent man to operate the machinery. Sections 8 to 11 provide for the acceptance of the bunkers by the lessee, the operation of the same, and the payment of the sum of twenty-five cents per ton of coal handled for rental during the term of the contract. The contract continues:

"12. Title to all of said coal bunkers and all equipment and machinery and any additional thereto made by the lessor (other than the pit and foundations) shall be and remain in the absolute property of the lessor, free and clear of all claims of the lessee or others.

"13. In no event or under any circumstances shall said bunkers and equipment, or any part thereof, be severable or removable from said real estate until the expiration of this contract, this contract shall run with said real estate.

"Neither the lessee nor others shall have the right to incur any mechanic's or other liens in connection with the repair or maintenance of any part of the leased property, and the lessee further agrees that he or they will not attempt to convey or mortgage or create any lien of any kind or character against the same or do anything or take any action that might hereinafter mature into a lien.

"14. In the event of a sale of the premises on which said bunkers and equipment stand, such sale shall be subject to all rights of the lessor as set forth herein."

Sections 15 and 16 provide that the contract shall continue for a period of five years from the date on which the equipment is ready for operation. At the expiration of said five years the lessee is given an option to purchase the bunkers and equipment at a price fixed. In the event the option to purchase is not exercised, the contract shall be automatically extended for three additional periods of five years each, with the right

to purchase on the same terms at the end of any five-year period. The contract continues: ·

"17. In view of the fact that the bunkers and equipment are of such nature that it is wholly impracticable to remove the same from the leased premises on a violation of the terms hereof, although the lessor reserves the right to do so at any time, it is agreed that in the event of a violation of the terms hereof the lessor shall be entitled to an action for all damages actually suffered by it together with reasonable attorney's fees in recovering the same and seven per cent interest on all such sums from the date such damages was incurred to the date of payment.

"18. The lessee agrees as a further consideration for the execution of this lease that in the event he or they shall become insolvent, or for any other reason to operate the National Coal Bunkers System and continue the payments provided for, that the lessor may at its option take possession of the plant and operate the same, provided the lessor shall pay to the lessee, his or their successors or assigns, a reasonable sum of money for the use of the real estate.

"19. In the event the lessee shall desire to retire from business and desires to sell, he or they shall give the lessor at least thirty days' notice of such intention and the selling price that he or they have the opportunity of furnishing a buyer for the premises.

"20. All the terms hereof are embodied herein.

"21. The covenants hereof shall be binding on the assigns and successors of the parties hereto."

The cross-complaint alleges that the National Manufacturing & Engineering Company constructed the bunker system, and that it was turned over to Herman O. Finch, who operated it for many years; that in February, 1924, the contract was assigned in writing to The Phillips Company as collateral security, and that thereafter the National Conveyor Company purchased the equity of the National Manufacturing & Engineering Company; that Finch had become wholly and

hopelessly insolvent and had not operated the bunker system for several months prior to the filing of the complaint. They allege that their rights are prior to the rights of the plaintiff and cross-complainant mortgage-holders. That the contract in question antedated the mortgages, and that at the time said mortgages were executed the mortgagees had full knowledge of the contract exhibited and of all the facts in relation thereto, and they allege the right to possession of the real estate in question under the contract and ownership of the coal bunker equipment, and that they are entitled to possession of the real estate described in the contract and upon which the mortgages are sought to be foreclosed.

Appellants contend that under the facts admitted by the demurrer they are the owners of the coal bunker system; that the owners of the mortgages obtained no interest in the coal bunker system by virtue of their mortgages, and that the contract gives appellants an interest in the real estate to the extent that they have a right to occupy it for the purpose of operating the bunkers upon the payment of a reasonable rental for the land.

Appellees contend that the contract does not by its terms create an interest in the real estate; that because of its meager description of the real estate it is not sufficient to constitute a lease.

The complaints to foreclose the mortgages allege that the appellants are asserting some interest in the real estate, but that they have no such interest. In the fourth memorandum of the demurrer it is stated: "The complaint and the cross-complaint of the defendant Farmers Trust & Savings Bank herein each show that the said leased property (the coal bunkers and equipment) is not covered by the respective mortgages made a part thereof, and that no claim is made to the leased

property by the plaintiff and the defendant Farmers Trust & Savings Bank, herein." The bunkers were erected upon a foundation on the real estate. Section 17 of the contract recites that it is wholly impracticable to remove the same. When permanent structures are erected on land, ordinarily they are considered part of the real estate. We have examined the complaint and cross-complaint referred to and find nothing therein indicating that the mortgage holders are disclaiming any right or interest in the structures.

The appellants had a clear right to have a determination of the question of whether the structures were part of the real estate, or were personal property which they might remove. For that purpose, at least, appellants' cross-complaint stated a good cause of action.

Have the appellants an interest in the real estate that permits them to occupy it as tenants? The intention of the parties to the contract is clear and not difficult to ascertain. The lessor was to furnish and construct the bunker system upon the lessee's real estate at its own expense, and title to the bunker system was to remain in the lessor, and it was agreed that the lessee should have no right to incur any liens against the system, and that he would not attempt to convey or mortgage it. That in event of sale of the real estate the sale would be subject to all the rights of the lessor. That in no event shall the bunkers and equipment be severable or removable from the real estate until the expiration of the contract, and that "this contract shall run with said real estate."

Section 19 provides that in the event the lessee shall fail to operate the system because of insolvency, the lessor may at its option take possession of the property, including the real estate, and operate the same, upon

payment to the lessee or his successors and assigns of a reasonable sum for the use of the real estate. It is evident that while the bunker system was to be considered as personal property, and not a part of the real estate, it was not to be removable therefrom during the life of the contract; that the two were to be used together as a unit in the conduct of the coal business, primarily by the lessee, but, upon his discontinuance or insolvency, by the lessor at its option upon payment of a reasonable rental for the land. It is apparent that the right to operate the equipment upon the real estate in the event of the lessee's default was considered a valuable right. The intention of the parties is clear. They had a right to make a contract which would carry out these intentions, and they clearly endeavored to do so. The contract was acknowledged and recorded, and notice of its terms is admitted by the holders of the mortgage.

No special or precise words are necessary to create a lease, and any instrument expressing the agreement of the parties by which a right of possession as tenant is given and acted upon is sufficient. Appellees contend that in order to constitute a lease the contract must describe the real estate with such particularity that it can be designated. In support of this proposition they cite several Indiana cases, the latest of which is *Weaver* v. *Shipley et al.* (1891), 127 Ind. 526, 27 N. E. 146, in which case the court says that the rule contended for by appellees is applicable where the contract is entirely executory, but that where the parties themselves put a particular construction on the contract, and the premises are taken possession of and occupied under the lease, the contract will be upheld. We quote the following from the opinion:

"In the language of Berkshire, J., in *Swales* v. *Jackson*, 126 Ind. 282, the appellees having 'entered into possession of the real estate under the contract, and having made lasting and valuable improvements, it would be inequitable and a fraud to withhold the title.' "

Section 1 of the contract refers to certain dimensions and a sketch of the property to be used, and there can be no doubt that the property involved was easily ascertainable, not only by the parties but by any one observing it because of the construction and location of the bunker equipment and the appurtenances used in connection with it.

Appellees also contend that there must be privity of estate to support a covenant running with the land, and that the contract shows no privity of estate. They cite the case of *Indiana Natural Gas Co.* v. *Hinton* (1904), 159 Ind. 398, 64 N. E. 224, from which we quote as follows:

"Covenants are either real or personal; the former are such as are annexed to an estate, or are to be performed on it, and are said to 'run with the land,' so that he who has the one is subject to the other. In order to run with the land and bind the assignee it must respect the thing granted or demised, *and the covenant must concern the land or estate demised.*"

The contract was necessarily to be performed on the land. The parties so understood it and expressly provided that it should run with the land. The contract created a privity of interest.

The appellees also contend that the payment of rental is a condition precedent to appellants' right to occupy the property. This question has not arisen. The appellants were not required to exercise their option to operate the bunkers, and thus occupy the real estate, immediately upon the discontinuance of operation by Finch or his assigns. Their right to have the bunkers

and equipment remain on the real estate continues, however, during the life of the contract. The question of whether reasonable rental must be paid as a condition precedent to their entering the premises for the purpose of operating the equipment will only arise when they undertake to exercise the option, and in no way affects the sufficiency of the appellants' cross-complaint.

Judgment reversed with instructions to overrule the separate demurrer of the appellee, Farmers Trust & Savings Bank of Kokomo, Indiana, Trustee, and the separate demurrer of the appellee, Farmers Trust & Savings Bank of Kokomo, Indiana, to the cross-complaint of the appellants, National Conveyor Company and The Phillips Company.

Roll, J., not participating.