**NOBLESVILLE REDEVELOPMENT COMMISSION, Appellant–Plaintiff,**

v.

**NOBLESVILLE ASSOCIATES LIMITED PARTNERSHIP, an Indiana Limited Partnership, Joe Faulkner, Von Blankenbaker, Noblesville Development Company, an Indiana General Partnership, Mercantile Bank of St. Louis National Association, Stop One Holding Corp., Inc. and The Kroger Co., an Ohio Corp., Appellees–Defendants.**

No. 29A02–9309–CV–514.

Court of Appeals of Indiana, First District.

Feb. 6, 1995.

Rehearing Denied April 25, 1995.

Jack G. Hittle, Church, Church, Hittle & Antrim, Noblesville, for appellant.

A. Donald Wiles, II, Patricia Polis McCrory, Douglas A. Tresslar, Harrison & Moberly, Indianapolis, for appellees.

## OPINION

ROBERTSON, Judge.

The Noblesville Redevelopment Commission appeals the judgment on the pleadings entered in favor of the Noblesville Development Company and the Mercantile Bank of St. Louis (collectively referred to as the NDC unless a distinction is warranted) on count II of the Commission's complaint by which the Commission had sought to foreclose a lien upon real estate owned by the Noblesville Development Company. The NDC had argued, in its motion for judgment on the pleadings, that the guaranty attached to the complaint did not create a lien upon the real estate in which the NDC holds an interest and, without a lien, the Commission was not entitled to a sale of the real estate to satisfy the personal obligation of the guarantors. The trial court agreed and entered a judgment on the pleadings in favor of the NDC.

In its motion to correct error, the Commission conceded, apparently in reference to the complaint, that "there is insufficient language to foreclose a 'Lien,'" but submitted that

"the incumbrance or covenant created by Section 2.3 of the Guaranty is sufficiently stated and pled to entitle the Plaintiff to proceed to Trial against all Defendants and to introduce ... evidence as to the effect of such covenant or encumbrance." In this appeal, the Commission argues that, whether or not it is labeled as a lien, the guaranty does contain what is in substance a covenant which runs with the land and that the allegations of the complaint permit relief upon this theory. We agree with the Commission that NDC's motion for judgment on the pleadings should not have been granted because, upon the well-pleaded facts, the Commission may be entitled to equitable relief. Accordingly, we reverse.

■ An Ind.Trial Rule 12(C) motion for judgment on the pleadings properly may be granted where there are no genuine issues of material fact. *Gregory and Appel, Inc. v. Duck* (1984), Ind.App., 459 N.E.2d 46, 49. A party moving for judgment on the pleadings admits the truth of the factual allegations contained in the non-moving party's pleading for purposes of the motion, and asserts that he is entitled to a judgment as a matter of law. *Id.*

■ When presented with a T.R. 12(C) motion, we accept as true, for purposes of review, the well-pleaded material facts alleged in the complaint. *Culver–Union Township Ambulance Service v. Steindler* (1994), Ind., 629 N.E.2d 1231, 1235; *Gregory and Appel,* 459 N.E.2d at 50. Since the trial rules require the pleader to attach to its complaint the written document upon which its action is premised, *see* T.R. 9.2(A), we may look to both the complaint and the attached contract for purposes of determining the appropriateness of the court's ruling on the motion for judgment on the pleadings. The attachment of the contract does not convert the motion to one for summary judgment. *Gregory and Appel,* 459 N.E.2d at 51.

■ As a general rule, the construction or legal effect of a contract is a question of law to be determined by the court. It is not a question of fact. *Id.*

We have derived these well-pleaded facts from the complaint and attached guaranty agreement. In December, 1989, the Commission, along with the Noblesville Redevelopment Authority (NRA), instituted a project to finance the acquisition and redevelopment of a designated redevelopment area, referred to in the parties' agreement as the allocation area. The project incorporated the construction of an extension of Logan Street through the City of Noblesville, Indiana. The NRA financed the costs of property acquisition and redevelopment in the allocation area by using the proceeds from the sale of bonds and repaid the bonds by using payments from a lease with the Commission. The Commission in turn made its lease payments from taxes on the real property and from the sale or lease of property in the allocation area.

Noblesville Associates Limited Partnership, Noblesville Associates Limited Partnership's general partner, and the individuals Von Blankenbaker and Joe Faulkner agreed to secure the Commission's lease payments in consideration for the NRA's issuance of the bonds, and on December 6, 1989, entered into a written guaranty agreement which was recorded on May 1, 1990. Under the terms of the agreement, the guarantors promised that if the tax increment generated from the described real estate did not equal at least $93,500.00 in 1992, the guarantors would make a supplemental payment to the Commission in the amount of the deficiency.

Attached to the agreement is the legal description of real estate referred to in the guaranty agreement as the Nationwise parcel, a part of which the NRA intended to acquire for roadway purposes. The guaranty agreement contemplates a reduction in payment by the guarantors should they not acquire the remainder of the Nationwise parcel. The relationship of the parties with respect to the parcels identified in the attached Schedule C, the parcels upon which the covenants are to run, is not described in either the complaint or the guaranty agreement.

There was no tax increment in 1992. Therefore, the guarantors owed the Commission a supplemental payment in the amount of $93,500.00. The guarantors made no payment, despite a written demand by the Commission, and stated that they did not have

the present ability to pay the guaranty payments.

Noblesville Development Company, an Indiana General Partnership, admits that it is the fee simple owner of the real estate described in Schedule C of the guaranty agreement. Mercantile Bank is the first lienholder against the real estate by virtue of a mortgage dated July 9, 1991, as described in rhetorical paragraph 7 of the complaint. According to the complaint, both defendants had actual knowledge of the existence of the guaranty before they acquired their respective interests in the real estate.

■■ "Running" *real* covenants have the incident of being enforceable in suits at law by or against those who have succeeded to an estate in real property. Under Indiana real property law, the burden of making payment may "run" with the ownership of land. *See e.g. Conduitt v. Ross* (1885), 102 Ind. 166, 26 N.E. 198; *Fair Building Co. v. Wineman Realty Co.* (1927), 87 Ind.App. 520, 156 N.E. 433.

■■ Analysis of a real covenant involves two inquiries: (1) is the covenant one which, under any circumstances, may run with the land; and (2) was it the intention of the parties as expressed in the agreement that it should run. *Ross,* 102 Ind. at 168, 26 N.E. 198. "A covenant may contain apt words to make it a continuing covenant; yet, if its nature or the subject-matter of it is such that it does not concern some interest or estate in land, either existing or created by it, it cannot run with the land." *Id.* at 169, 26 N.E. 198. Running covenants are contracts but they are also, or at least operate as, either a conveyance or grant or as a reservation of title. B. Gavit, Covenants Running with the Land, 5 Ind.L.J. 432 (1929–1930). Traditionally, a covenant imposing an affirmative burden is said to run with the land if the covenantors intend it to run; the covenant touches and concerns the land; and there is privity of estate. *See generally, Moseley v. Bishop* (1984), Ind.App., 470 N.E.2d 773, 776.

■ We agree with the parties that the contract at issue here is not ambiguous on the matter of the parties' intent. The covenanting parties objectively intended the burden to pay the tax increment to be enforceable against remote grantees. A continuing covenant may exist without the words "assigns" or "grantees" but when these or equivalent words are used, they become persuasive of the intent of the parties. *Conduitt v. Ross* (1885), 102 Ind. 166, 170–1, 26 N.E. 198. *Cf.* Restatement of Property § 531 cmt. c (1944) (If promise purports to bind by use of such words as "successors" or "assigns" little question can arise as to the existence of the necessary intention). Section 2.4 of the guaranty agreement provides that the "Guaranty shall be binding upon any successor in interest to the Guarantor particularly in regard to the following described real estate: (See Schedule C)." Section 4.1 reads:

> The obligations of the Guarantor under this Guaranty Agreement shall arise absolutely and unconditionally when the Bonds shall have been issued, sold and delivered by the Authority. This Guaranty Agreement shall bind the successors, assigns and legal representatives of the Guarantor.

The express language of the agreement is persuasive of the parties' intent.

Notwithstanding this language, the NDC argues that, because the covenant expressly states that it binds "successor[s] in interest" and neither appellee-defendant precisely meets the legal definition of successor in interest, the parties did not intend to bind NDC, a remote grantee of the original covenantor. The terms "successors in interest" and "successors to the estate" appear throughout the cases and treatises which deal with real covenants. This is so because the basis of transfer of a real covenant is succession to a particular estate in land. *See e.g.* C. Clark, Real Covenants and Other Interests Which "Run With Land" 93, 112 (2d 3d. 1947) (Grantor and grantee are in successive relationship of estate). *See also,* Restatement of Property § 530 cmt. b (word "successors" used broadly to mean all who succeed to the position of a predecessor with respect to the land in question; succession with which promise can "run" limited to a succession in interest).

■ *Adult Group Properties, Ltd. v. Imler* (1987), Ind.App., 505 N.E.2d 459, 465–6, *trans. denied,* stands for the proposition that the language of a real covenant must be read in an ordinary or popular sense and not in a legal or technical sense, since the goal of contract interpretation is to effectuate the parties' intent. No particular language is *required* to demonstrate an intent to run with the land. Thus, the guaranty agreement unambiguously demonstrates an intent to run with the land and, applying the plain and ordinary meaning of the term "successors," binds those persons who ultimately succeed to title or estate.

■ The NDC also argues that the guaranty agreement does not touch and concern the land, but contains rather a mere personal obligation. Neither Indiana case law nor the secondary authorities which report upon the subject state any absolute test for the requirement that a covenant "touch and concern" the land.[1] See C. Clark, Real Covenants and Other Interests Which "Run With Land" 96 (2d ed. 1947). The touch and concern requirement is in essence a public policy limitation on the type of obligation that may become a running covenant; if the touch and concern element is found to be lacking, the requirement effectively overrides the parties' intent to create a running covenant. *Id.*

In our view, the covenant at issue touches and concerns the land because it furthers

society's goals of land utilization and free alienability. See Restatement of Property § 537 cmt. a (1944). When one examines the transaction of which the guaranty agreement and the covenant at issue are a part, it becomes apparent that the covenanting parties fully contemplated the benefit of obtaining the fullest use of the land to be burdened by the covenant and did not perceive the possible burden of paying the tax increment to be a disincentive. Indeed, by creating an allocation area and structuring the payment of the improvements intended to enhance the burdened property through tax increment financing, a method provided by the legislature for achieving the "maximum opportunity for rehabilitation or redevelopment of the allocation area," *see generally* I.C. 36–7–14, the covenanting parties enabled the NDC's remote grantor to realize a substantial enhancement in the economic value of its property. *Cf. Baldwin v. Moroney* (1910), 173 Ind. 574, 579, 91 N.E. 3 (Road or street improved is in a sense an appurtenance of the land which increases its value; whoever holds an interest in the land profits by the appurtenance, and ought, "in justice," be subjected to the lien which secures the assessment). Here, the transaction of which the guaranty and covenant are a part transformed the burdened property from a "blighted area" with an impaired value, in which normal development and occupancy were undesirable or impossible, I.C. 36–7–1–3, to a revenue-producing shopping center.

---

**1.** Indiana case law offers no definition of its own of the touch and concern requirement, while the commentators propose many. It has been said that in order for a covenant to run with the land, its performance or nonperformance must affect the nature, quality or value of the property independent of collateral circumstances, or must affect the mode of enjoyment. 3 H. Tiffany, Real Property § 854 (3d ed. 1939). *See e.g. Scott v. Stetler* (1891), 128 Ind. 385, 27 N.E. 721 (Deed which conveyed mill and all privileges and easements thereto contained implicit covenant that grantors had right to maintain dam and overflow adjacent land at height at time deed made; covenant adds to and is part of the value of property, and is essential part of estate assumed to be conveyed; therefore, covenant necessarily referred to estate itself). Other commentators suggest that the test of whether a covenant touches or concerns the land is whether the legal relationship of the persons as owners of the land is affected by the covenant or whether it relates

only to them as persons. *See e.g.* Thompson on Real Property § 3151, at 73. Professor Bigelow proposes that the courts ascertain the exact effect of the covenant upon the legal relationships of the parties. If the promisor's legal relations in respect to the land in question are lessened—his legal interest as owner rendered less valuable by the promise—the burden of the covenant touches or concerns that land; if the promisee's legal relations in respect to that land are increased—his legal interest as owner rendered more valuable by the promise—the benefit of the covenant touches or concerns that land. Judge Clark has refined the Bigelow test by adding a common sense approach: where *the parties,* as laypersons and not as lawyers, would naturally regard the covenant as intimately bound up with the land, aiding the promisee as landowner or hampering the promisor in similar capacity, the requirement should be held fulfilled. Clark, Real Covenants 99.

The burden on the property plainly bears a logical or reasonable relationship to the enhancement in value enjoyed by the NDC; the change in physical use of the land came about because the property owner was willing to burden its property.

■ In Indiana, however, the concepts of touch and concern and privity are not analytically distinct.[2] A covenant which may run with the land must have relation to the interest or estate granted, and the act to be done must concern the interest created or conveyed. *Indiana Natural Gas & Oil Co. v. Hinton* (1902), 159 Ind. 398, 402, 64 N.E. 224; *Scott v. Stetler* (1891), 128 Ind. 385, 27 N.E. 721; *Indianapolis Water Co. v. Nulte* (1890), 126 Ind. 373, 377, 26 N.E. 72; *Wells v. Benton* (1886), 108 Ind. 585, 592, 8 N.E. 444, *reh'g denied by* 108 Ind. 585, 9 N.E. 601. If no estate is created by the contract, there is none to which a burden can attach. *Nulte,* 126 Ind. at 377, 26 N.E. 72; *Evansville & Southern Indiana Traction Co. v. Evansville Belt Railway Co.* (1909), 44 Ind.App. 155, 164–5, 87 N.E. 21. In law, the agreement simply creates a mere personal obligation on the part of the covenantor for breach of which he is personally liable. *Nulte,* 126 Ind. at 377, 26 N.E. 72.

Historically, if a covenant has been deemed a personal one and held not to run at law, it has been because no estate or interest to which a covenant could attach has been conveyed or transferred. *See e.g. Bloch v. Isham* (1867), 28 Ind. 37 (No actual conveyance of mutual easements; parties not tenants in common of party wall); *The Junction Railroad Co. v. Sayers* (1867), 28 Ind 318 (Verbal agreement regarding modification of channel not annexed to an easement); *Nulte,*

(1890), 126 Ind. 373, 26 N.E. 72 (No estate transferred between parties to agreement); *Lennertz v. Yohn* (1948), 118 Ind.App. 443, 451; 79 N.E.2d 414 (In absence of reservation, condition or restriction in deed or assignment or transfer, agreement personal in character); *Evansville & Southern Indiana Traction Co.,* 44 Ind.App. 155, 87 N.E. 21; *Sullivan v. Kohlenberg* (1903), 31 Ind.App. 215, 67 N.E. 541 (no privity of estate where agreement to never sell or permit sale of intoxicating liquors not contemporaneous with transfer of interest). For the most part, where privity exists, the covenant has also been held to run and, hence, touch and concern the land. *See e.g. Pulos v. James* (1973), 261 Ind. 279, 302 N.E.2d 768 (restrictive covenant); *Raco Corp. v. Acme–Goodrich, Inc.* (1956), 235 Ind. 67, 131 N.E.2d 144; *National Manufacturing & Engineering Co. v. Farmers' Trust & Savings Bank* (1933), 204 Ind. 535, 185 N.E. 146 (Right of lessor, owner of bunker, to occupy and operate bunker upon failure of lessee, landowner, annexed to estate transferred in lease or to be performed on it); *Fair Building Co.,* 87 Ind.App. 520, 156 N.E. 433 (party wall); *Foertsch v. Schaus* (1985), Ind.App., 477 N.E.2d 566, *trans. denied.* (Entirety clause in oil and gas lease which concerned apportionment and payment of rents and royalties covenant running with land); *Mosley,* 470 N.E.2d at 778 (agreement to maintain drainage tile made in same document and in context of transfer of easement). *But cf. Geyer v. Lietzan* (1952), 230 Ind. 404, 103 N.E.2d 199 (Right to renew lease personal); *Thiebaud v. Union Furniture Co.* (1895), 143 Ind. 340, 42 N.E. 741 (Agreement to pay for water pump personal despite fact contained in deed reserving right to water); *Wells,* 108

**2.** *Conduitt v. Ross,* 102 Ind. 166, 26 N.E. 198 describes a running covenant in this way:

When an instrument conveys or grants an interest or right in land, and at the same time contains a covenant in which a right attached to the estate or interest granted is reserved, or when the grantee covenants that he will do some act on the estate, or interest granted, which will be beneficial to the grantor, either as respects his remaining interest in the lands out of which an interest is granted, or lands adjacent thereto, such covenant is one which may become annexed to and run with the land, and bind its owners successively. When such

grant is made, and contains a covenant so expressed as to show that it was reasonably the intent that it should be continuing, it will be construed as a covenant running with the land. A covenant which may run with the land must have relation to the interest or estate granted, and the act to be done must concern the interest created or conveyed.... 'When the thing to be done, or omitted to be done, concerns the lands or estate, *that* is the *medium* which creates the privity between the plaintiff and defendant.'

102 Ind. at 169, 26 N.E. 198.

Ind. 585, 8 N.E. 444 (Agreement to pay judgments, consideration for conveyance, lacking in relation to interest or estate granted, or payment of judgment did not concern the interest created or conveyed); *Graber v. Duncan* (1881), 79 Ind. 565 (Agreement to pay taxes on real estate not covenant annexed to or connected with realty in such way as to run with land and be appurtenant to it).

Neither the Commission's complaint nor the attached guaranty indicate that there was any type of conveyance or transfer of interest among the parties to this agreement. The guaranty suggests that a transfer of interest in the Noblesville Associates Limited Partnership's land may have been contemplated as a means of creating the roadway. Nonetheless, the Indiana cases all seem to require that the transfer of interest be contemporaneous. *But cf.* Restatement of Property § 534 cmt. h (1944) (Interest in land which is part of transaction in which promise respecting use of land made may be created simultaneously or prior to making of promise).

■ Indiana courts have circumvented the requirement of privity by enforcing in equity what otherwise might be real covenants as servitudes. Notice of the existence of the servitude substitutes for privity in equity, and binds subsequent purchasers who have acquired the property without the status of a bona fide purchaser for value without notice.

■ Because equity recognizes that which the law regards as creating no property right nor interest analogous to property but only a mere personal right and obligation, equity supplies the means by which a plaintiff can enforce a defendant's contractual obligation. The remedy of equitable lien operates directly upon the thing with which the covenant deals. *See* S. Symons, 4 Pomeroy's Equity Jurisprudence § 1234, 695 (5th ed. 1941). In order that a lien may be created by contract, express or implied, it is generally necessary that the language of the contract or the attendant circumstances clearly indicate an intention of the parties to create a lien upon the specific property. *Carmichael v. Arms* (1912), 51 Ind.App. 689, 100 N.E.

302, 304. Where the equitable lien depends upon the terms of an executory contract in writing based upon a valuable consideration, the lien may be declared where the intention is clearly indicated to encumber, or appropriate, as security for a debt or other obligation, some particular property therein described. *Id.* Such a lien may be enforced against the designated property in the hands of the original obligor or his heirs, personal representatives, assigns, or purchasers with notice. *Id.* Accord *Monticello Hydraulic Co. v. Loughry* (1880), 72 Ind. 562, 566; *Powell v. Totten* (1928), 93 Ind.App. 442, 446, 162 N.E. 418; *Sawers Grain Co. v. Goodwine* (1925), 83 Ind.App. 556, 566, 146 N.E. 837.

■ Equity also recognizes a lien which is based upon general considerations of justice between the parties to the transaction involved. *Bahar v. Tadros* (1953), 123 Ind. App. 570, 583, 112 N.E.2d 754. Such a lien may result by implication from a duty resting on the owner of property which is the subject matter of the lien, and the lien is completed by equity in pursuance of the maxim "that is deemed done that ought to be done." *Id.*

The covenant between the parties to the guaranty agreement lacks the attribute of enforceability against subsequent purchasers only because the covenanting parties failed to follow the formality of exchanging deeds, thereby creating a real property interest to which the covenant could attach. The NDC and its mortgagee had actual notice of the existence of the covenant and the parties' intent to create a binding real covenant before they acquired their legal and equitable interests in the real estate. The guaranty agreement reveals upon its face the parties' intent to encumber the real property described with legal specificity in schedule C. The defect at law is one for which equity provides a remedy.

The judgment on the pleadings in favor of the NDC is reversed, and the matter may proceed upon the evidence.

Judgment reversed.

BAKER, J., concurs.

NAJAM, J., concurs with separate opinion in which BAKER, J., concurs.

NAJAM, Judge, concurring.

I concur but write separately to emphasize the aspect of this case which I believe requires a determination that the guaranty is not a mere personal obligation but a covenant which is ancillary to the transfer of a real property interest and, hence, is annexed to and runs with the land.

As noted by the majority, Section 4.1 provides that the obligations under the guaranty arise when the bonds have been issued, sold and delivered by the Authority. Thus, there is a definite connection between the covenant of the guaranty and the land. The guaranty does not operate independently but only as an integral part of the development plan. The guaranty was issued to further secure payment of the bonds, and the bonds were issued, in part, upon the faith of the guaranty.

In its operation and effect, the economic development mechanism known as tax increment financing (TIF) created the transfer of a real property interest to which the covenant of the guaranty can attach. The interest created is not a traditional common law title or estate conveyed by deed or other instrument from one party to another but an economic property interest, inherent in the statutory scheme, that attached to the allocation area when the real estate was submitted to the TIF regime. As we have noted, under this mechanism, the bond proceeds are invested to enhance the economic value of the allocation area, and the tax increment from real property located within that area is dedicated to repayment of the bonds and related expenses.

NDC contends correctly that for an affirmative covenant to touch and concern the land it must affect the physical use and enjoyment of the land. *See Moseley v. Bishop* (1984), Ind.App., 470 N.E.2d 773, 777. (for covenant to run with land, grantor's contract must have some logical connection to subsequent purchaser's use and enjoyment of land). However, I cannot agree with NDC's argument that the guaranty here does not meet that requirement. Brief of Appellees at 12. The guaranty affects the physical use and enjoyment of the land because it was, in part, on the faith of the guaranty that the bonds were issued and the infrastructure improvements were made. Those improvements enhanced the economic and asset value of the allocation area, which inured to the benefit of both NDC and Mercantile Bank, its mortgagee. In sum, on these facts, the covenant of the guaranty, as a condition of the TIF development plan, carries with it both benefits and burdens which run with the land.